ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY CO. *v.* LEATHERS.

Opinion delivered April 4, 1896.

RAILROADS — FAILURE TO KEEP LOOKOUT — CONTRIBUTORY NEGLI-
GENCE.—The defense of contributory negligence is available in an action against a railroad, under the act of April 8, 1891, making it the duty of all persons running trains to keep a constant lookout for persons and property upon the track, and making the company liable for all damages resulting from neglect to keep such lookout. (BATTLE, J., dissenting.)

Appeal from White Circuit Court.

GRANT GREEN, Jr., Judge.

*Dodge & Johnson,* for appellant.

1. This case is similar to 56 Ark. 457; 54 *id.* 431 and *Railway Co.* v. *Martin, ante* p. 156, and the contributory negligence of deceased was a complete bar. Besides he was an employee of the company, was fully aware, and had been duly cautioned of the danger of passing through the yards.   46 Ark. 396, 404; 106 Mass. 461.

2. The court erred in modifying instructions 4, 5 and 6. The addition to the 4th instruction simply eliminates the defense of contributory negligence, and entitled the plaintiff to recover if they found no lookout was being kept, even if it was impossible to prevent the injury.

*J. N. Cypert,* for appellee.

HUGHES, J. This is an appeal from a judgment against the railway company for damages for killing a twelve-year old son of the appellee, while attempting to cross the railroad track in front of a train, which was backing at the time it struck the boy, with no one on the end of the train next to the deceased to keep a lookout.

The boy was attempting to cross at a crossing obstructed by a train of the appellant company. The view from the backing train, that struck him, to a point beyond where he was killed, was open and unobstructed. The fireman and engineer of the train that killed him testified that they did not see the boy until after he was struck.

The jury must have inferred that the employees of the railway might have seen him before, if they had kept a constant lookout, as required by the act of April 8th, 1891, and in time to have prevented striking him, and, under the circumstances and testimony in the case, this was a question for the jury. We would not disturb the finding as to this, if there was no question of contributory negligence in the case.

The court gave, of its own motion, several instructions, to which no objections were made by defendant. The court refused to declare the law as set out in the fourth, fifth, and sixth instructions as asked by the defendant, but gave the same in a modified form. That part of the instructions in parenthesis, italicized, were the modifications made to defendant's instructions, over defendant's objections, in which form they were given by the court. "4. If the jury find, from the evidence, that the deceased came upon the track so close to the backing engine and tender that it would have been impossible for those in charge of the engine to have prevented his being run over or struck (*had they been keeping a lookout for persons on the track*), you will find for the defendant."

"5. You are instructed that contributory negligence is a complete defense to actions of this character, and if you find, from the evidence, that the deceased, Samuel Leathers, was guilty of negligence in being on or near the track, and that, without such negligence on his part, the accident would not have happened, then you will find for the defendant, even though you should find that the defendant's employees failed to keep a proper lookout, or were guilty of negligence in any other particular charged in the complaint, unless you further find that the defendant's employees became aware of the negligence of deceased in time to have avoided injuring him, and failed to exercise such care, (*or that they failed to keep a lookout for persons on the track when, by keeping such a lookout, the injury might have been avoided*)."

"6. You are instructed that it is negligence for one at a railroad crossing to go upon the railroad track without first looking up and down the track, and listening for any approaching train or engine. And a failure to so look and listen will prevent a recovery from the railway company for an injury occasioned thereby, unless the employees of the railway company became aware of the negligence of the injured party in time to have avoided injuring him by the exercise of reasonable care, and failed to exercise such care, (*or if he might have been discovered by keeping a lookout, and they failed to keep such lookout*)."

The jury returned a verdict in favor of plaintiff for $350.00. Defendant filed a motion for a new trial, which was overruled. Exceptions were saved, and defendant appealed.

These instructions were erroneous. The fourth was inconsistent in itself. Each one of them ignored the doctrine of contributory negligence, which we hold

still applies to cases like this, notwithstanding the act
of April the 8th, 1891, which provides :

"Sec. 1.   That it shall be the duty of all persons
running trains in this state, upon any·railroad, to keep
a constant lookout for persons and property upon the
track of any and all railroads, and if any person or
property shall be killed or injured by the neglect of any
employees of any railroad to keep such lookout, the
company owning and operating any such railroad shall
be liable and responsible to the person injured for all
damages resulting from neglect to keep such lookout,
and the burden of proof shall devolve upon such railroad
to establish the fact that this duty has been performed."
Acts of 1891, page 213.

This act has been construed by this court in an
opinion delivered by Mr. Justice Wood, at the present
term of this court, in the case of *Johnson* v. *Stewart,
ante,* p. 164.   We adhere to the ruling in that case respect-
ing the effect of that statute upon the doctrine of con-
tributory negligence.   In our opinion, it makes the failure
to keep a constant lookout by the employees of a railroad
company negligence, and puts the burden upon the rail-
road company to establish the fact that it has kept such
lookout.   This is the extent of the change made in the
law by this statute, which, in our opinion, does not, in
such cases as this, abrogate the doctrine of contributory
negligence.   It has been repeatedly held by this court
that "one who is injured by mere negligence of another
cannot recover at law or equity any compensation for his
injury, if he, by his own or his agent's ordinary negli-
gence or wilful wrong, contributed to produce the injury
of which he complains, so that, but for his concurring
and co-operating fault, the injury would not have
happened to him, except when the direct cause of the
injury is the omission of the other party, after becoming
aware of the injured party's negligence, to use a proper

degree of care to avoid the consequences of such negligence." *L. R. & Ft. S. Ry. Co.* v. *Cavenesse*, 48 Ark. 124, and cases cited. This is a doctrine which, according to the great weight of authority, seems founded in reason and justice, and which, in our opinion, the act referred to was not intended to and does not abrogate.

If it had been the intention of the legislature that passed this act to abolish the right to interpose the defense of contributory negligence in such a case, it could, should, and doubtless would, have said so in unambiguous terms. As said by Judge Wood in *Johnson* v. *Stewart*, *supra*, "where the negligence of the plaintiff contributes proximately to cause the injury of which he complains, the defendant is not liable," unless the defendant, after becoming aware of the plaintiff's negligence, could, by the use of proper care, have avoided the consequences of such negligence.

Before the passage of this act, it was the duty of railway employees to keep a lookout at crossings, as repeatedly held by this court, and it was never thought that this fact would exempt a party injured by a railway at a crossing from the consequences of his own negligence, which contributed to the injury.

The company claimed that the deceased was himself guilty of negligence contributing to his injury, and this question should have been submitted to the jury. On the facts as shown by the record, we would not disturb the verdict. But, for the error indicated, the judgment is reversed, and the cause is remanded for a new trial.

BATTLE, J. I do not concur with the court as to the interpretation of the act of the General Assembly, entitled, "An act to better protect persons and property upon railroads in this state," approved April 8, 1891.

Previous to the enactment of this act it was held by this court that "a person who goes upon a railroad track

without license or invitation of the company owning the road is a naked trespasser," and the railroad company owes him no duty until his presence there is discovered; that, after he is seen upon the track by the men in charge of a train running upon the road, they may act upon the presumption that he will step aside in time to avoid a collision, unless it is obvious, from his condition or circumstances beyond his control, that he cannot extricate himself from the danger menacing him; that the sole duty which the corporation owes him is not wantonly or with reckless carelessness to run over him after his situation is perceived; that its liability must be measured by the conduct of its employees after they become aware of his presence upon the track, and not by their negligence in failing to discover him; and that if, before they become aware of his presence, the train runs over and injures or kills him, no damage can be recovered by the company, because he was guilty of contributory negligence in being on the track without leave or invitation. (*St. Louis, &c. Railway* v. *Monday*, 49 Ark. 257; *Sibley* v. *Ratliffe*, 50 Ark. 477.) It also held in *Memphis & L. R. Railway* v. *Kerr*, 52 Ark. 162, that "the *extent* of a railroad company's duty to the owner of stock which has strayed upon its track is that the engineer in charge of the train at the time shall use ordinary or reasonable care, after he discovers the stock, to avoid injuring it; and it is not negligence for a railroad company to fail to keep a lookout for stock." No damages, of course, were recoverable of the railroad company for killing stock by trains before its discovery upon the track.

To avoid the force and effect of these decisions the act of April 8th, 1891, was passed. It is as follows:

"Whereas, in this state the railroad tracks are mostly exposed and uninclosed, and persons and live stock are often upon the tracks, and are in danger of

being killed, and *are injured and killed* upon the track, *when*, *by a proper outlook and care on the part of those running trains*, *such injury could be avoided;* and

"Whereas, the supreme court has recently decided that it is not the duty, under existing laws, of the railroad companies in this state to keep an outlook for trespassers on their tracks, whereby those who run the trains are led to neglect the precaution to keep a lookout in running the trains, and thereby great damages to persons and property are occasioned to the good poople of this state, therefore,

"Be it enacted by the General Assembly of the State of Arkansas :

"Section 1.   That it is and shall be the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout, the company owning and operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such outlook, and the burden of proof shall devolve upon such railroad to establish the fact that this duty has been performed."

Under this act it is the duty of railroad companies to keep a constant watch for persons upon their tracks. For what purpose?   To avoid killing or injuring them. The imposition of the duty to keep a constant lookout indicates clearly the intention of the act to require railroads to use the means prescribed by law to avoid injuring them after they discover them upon their track. This was their duty before the act of April 8th became a law.   The former, without the latter, would be entirely unnecessary, and accomplish nothing.

The act makes no change in the duties of railroads after discovering persons upon their tracks. Their duties in this respect are thus defined in *St. Louis, I. M. & S. Railway* v. *Wilkerson*, 46 Ark. 523: "If the employees of a railroad company in charge of its train see a man walking upon its track at a distance ahead sufficient to enable him to get out of the way before the train reaches him, and are not aware that he is deaf or insane, or from some other cause insensible of the danger, or unable to get out of the way, they have a right to rely on human experience, and to presume that he will act upon the principles of common sense and the motive of self-preservation common to mankind in general, and will get out of the way, and to go on, without checking the speed of the train, until they see he is not likely to get out of the way, when it would become their duty to give extra alarm by bell or whistle, and if that is not heeded, and it becomes apparent that he will not get out of the way, then, as a last resort, to check its speed, or, stop the train, if possible, in time to avoid disaster. If, however, the man seen upon the track is known to be, or from his appearance, gives them good reason to believe that he is insane or badly intoxicated, or otherwise insensible of danger, or unable to avoid it, they have no right to presume that he will get out of the way, but should act upon the hypothesis that he might not or would not, and should use a proper degree of care to avoid injuring or killing him." See also *St. L., I. M. & S. Railway* v. *Monday*, 49 Ark. 263.

But what are the consequences of the failure of a railroad company to keep a constant lookout? The act says that, if any person shall be killed or injured on account of such failure, it "shall be liable and responsible to the person injured for all damages resulting from neglect to keep such outlook." Does it mean to say that the railroad company shall be responsible

only for a failure to observe proper watchfulness, and not for a neglect to use the proper precautions to avoid injuring a person on the track after he would have been discovered by a constant lookout? Damages do not result from the mere neglect to keep a lookout, but from the failure to use the means to avoid a collision with the person injured which should have been used after he would have been discovered on the track, had the proper lookout been kept, and not then if the discovery would or could not have been made in time to avoid the injury in the manner prescribed by law. Hence, the act necessarily means that, if a constant lookout is not kept by persons running trains upon any railroad in this state, the company owning and operating the road shall be responsible for all damages from injuries to persons upon its track by its trains which could have been reasonably avoided had a constant lookout been kept. If this is not its intention and effect, it has failed to accomplish the end for which it was obviously enacted.

But it may be said that the effect of this construction would relieve persons injured on railroad tracks of the consequences of contributory negligence. This may be true to some extent. The act recognizes the fact that persons often go upon the tracks of railroads "without leave or license," and because they do so, and for their protection on account thereof, the act was enacted. The preamble, in assigning the reasons for enacting it, recites that, "Whereas, in this state, the railroad tracks are mostly exposed and uninclosed, and persons and live stock are *often* upon the tracks, and are in danger of being killed, and are injured and killed upon the track, when, by a proper outlook and *care* on the part of those running trains, such injury could be avoided,   *   *   *   * therefore, be it enacted," etc. For this reason it was held, at one time, in this state that it was the duty of an

engineer upon a railroad train "to keep a constant and careful lookout and watch for stock which might be on the track," and that although stock be wrongfully on the railroad track, and was not seen by the engineer, and was injured, "yet if, by the exercise of ordinary care and watchfulness, he might have seen it in time to have averted the danger," the railroad company was liable for the injury that resulted from the accident. *L. R. & Ft. S. Railway* v. *Finley*, 37 Ark. 562; *L. R. & Ft S. Railway* v. *Holland*, 40 *id.* 336. This rule is substantially the act in question, extended to and protecting stock and persons alike, so far as applicable. The history of the law upon this subject in this state, and the reasons assigned for both the act and rule, it seems to me, clearly show that the act was intended to make the rule the law in this state for the protection of persons and stock alike, so far as appropriate.

*Johnson* v. *Stewart, ante,* p. 164, is cited in the opinion of the court. What is said in that opinion in reference to this act of April 8th, 1891, was an *obiter dictum,* and, while entitled to much respect and consideration, is not controlling in this case. In one respect it might be cited to sustain the view I have taken. It is said in that opinion: "Prior to the decision of this court in *Memphis & L. R. Railway* v. *Kerr*, 52 Ark. 162, and the act of 1891, it was the duty of railroads to 'use all reasonable efforts to avoid harming an animal after it was discovered *or might by proper watchfulness have been discovered* on or near the track." *L. R. & Ft. S. Ry Co.* v. *Holland*, 40 Ark. 336; *Same* v. *Finley*, 37 *id.* 562. The act of 1891, so far as domestic animals were concerned, only had the effect to declare the law as it was before the decision of *Kerr* v. *Railway, supra,* overruling former cases." Why it does not adopt the same rule as to persons is not easily explained. But this and all said about the act of 1891 was an *obiter*

*dictum.* I so thought at the time the opinion was read, and for that reason filed no dissent.

The other cases cited or referred to in the opinion of the court state what the law was at a time before the 2d day of April, 1891, and do not undertake to construe the act of that date. As to them, it is sufficient to say that a valid statute repeals all laws in force at the time it takes effect, which are inconsistent with it.