For these reasons, the judgment of the circuit court is affirmed.

---

St. Louis, Iron Mountain & Southern Railway Company

*v.* Jordan.

65 429
69 382

Opinion delivered July 9, 1898.

RAILROAD—LIABILITY FOR KILLING DRUNKEN TRESPASSER.—In a suit against a railroad for killing a drunken trespasser on its track, the court instructed the jury that the railroad is liable if the trainmen failed to keep a constant lookout, when, by keeping such lookout, they could have discovered deceased's condition in time to prevent injuring him. *Held,* (1) that the instruction was abstract, since there was no evidence to show that, if such lookout had been kept, his condition could have been discovered in time to prevent injuring him; (2) that the instruction was erroneous in making the railway company liable for failure of the trainmen to keep a lookout, notwithstanding the contributory negligence of the deceased. (Page 431.)

Appeal from Cross Circuit Court.

FELIX G. TAYLOR, Judge.

*Dodge & Johnson,* for appellant.

Those in charge of the train might reasonably have expected deceased to get off the track upon the giving of the

usual danger signals; and, until they discover the fact, they did not owe him any greater degree of care because of his being drunk.   46 Ark. 673; 25 Mich. 279; 36 Ark. 46; 36 Ark. 376; 49 Ark. 262, 263; 47 Ark. 497; 69 Miss. 631.   The unimpeached testimony of all the eye-witnesses shows no negligence, and a finding of negligence is unwarranted.   41 Ark. 163; 78 Ky. 621; 22 S. W. 603; 69 Miss. 231.   The evidence proves contributory negligence.   26 Ark. 3; 46 Ark. 106; 26 Ark. 377; 46 Ark. 388; 46 Ark. 513.   The third instruction for plaintiff is erroneous, in that it entirely ignores the defense of contributory negligence.   62 Ark. 235; 62 Ark. 245; 62 Ark. 164.

*Rose, Hemingway & Rose,* for appellee.

The killing being proved, the burden was on the appellant to excuse it and show absence of negligence.   Sand. & H., Dig., 6349;   63 Ark. 636;   45 S. W. 548.   The jury had a right to say that the improbable ʳstory of those in charge of the train was not true, and did not disprove negligence.   54 Ark. 214; 45 Ark. 295.

BUNN, C. J.   This is an action for damages for negligently killing plaintiff's intestate—First, for the benefit of the estate; and, second, for the benefit of the widow and next of kin of the deceased.   The verdict of the jury was for the defendant company on the first count, but for the plaintiff on the second count in the sum of $1,500.   On the first count the damages were laid in the complaint at $5,000, and on the second count at $10,000.

The testimony shows that on the first of March, 1894, one of defendant company's trains was being run northward on the Bald Knob branch of the Iron Mountain railroad, and, on approaching the town and station of Wynne, struck, ran over, and instantly killed plaintiff's intestate, Walters, while he was approaching the train on the track.   C. C. Cradock, at the time of the accident fireman on the engine, as a witness for plaintiff, testified, in substance, that at the lower end of the railway yards at Wynne there was a sign-post, marked 'Switch Limits. Slow.'   This was reached by the engine about 300 feet before the engine struck the deceased, which occurred about one-half

mile before reaching the station at Wynne. When the engine
passed that post, it was running at the rate of about twenty
miles per hour, and when it struck deceased it was running at
the rate of fifteen or eighteen miles per hour, and was evi-
dently slowing up at the time of the accident. Witness saw
Walters walking on the track directly towards the engine, and
the engineer saw him about the same time. He was about 200
or 300 yards away when they first saw him, but was 50 or 60
yards from them when, by his staggering, they saw that he was
drunk. Previously the engineer had sounded the whistle at
the limit post, giving it a long sound, and, we infer, began to
slow up. When they saw the man was apparently drunk, the
engineer at once sounded the whistle four or five times, and
put on the brakes. Witness, continuing, states: "He [the
engineer] commenced that whistling when he was, I guess, 50
or 60 yards from the man. I guess the man could have got
off in the 50 or 60 yards. He could have got off the track on
either side. About two steps would have taken him off. With
the brake lever the engineer threw the brake on. This as soon
as he saw he was intoxicated,—just instantly. I do not think
the engineer could have done anything else to avoid the acci-
dent. I could not tell which way the man was looking, but
think he was looking down. Our train made a kind of rum-
bling noise. I did not know this man was drunk until I saw
him stagger, as I have said." This witness was substantially
supported by the others.

The evidence in support of the charge of negligence of the
railroad employees in charge of the train is, to say the most of
it, of the most unsatisfactory character, and, to some of us at
least, it is not exactly clear; but, with proper instructions, the
jury might not have reached a different verdict.

The first instruction given at the instance of the plaintiff
applies solely to the first count, which, by the verdict and judg-
ment of the court, is eliminated from this controversy. The
second has reference to the measure of damages under the
second count only, and it is not necessary to consider it here.

The third is a copy of section 6207 of Sand. & H. Dig., on
the subject of keeping a constant lookout, which, from the un-
controverted testimony in this case, was perhaps needless, if

not abstract and misleading; and, seemingly to cure any errors in giving it, the court, on its own motion, gave the following, also over the objection of the defendant: "The law makes it the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the tract of any and all railroads; and, if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout, the company owning and operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout. This law does not apply where adult persons go upon a railroad track, where they have no right to be, and carelessly allow a train to strike them; but, if you find from the evidence that the deceased, G. L. Walters, was so badly intoxicated as to be insensible of danger, and that the employees of the defendant in charge of the train that struck and killed said Walters failed to observe the above rule of law by keeping a constant lookout, and that, if they had kept such lookout, they could have discovered said Walters' insensible condition in time to prevent injuring him, you will find for plaintiff."

In saying that the lookout statute "does not apply when adult persons go upon a railroad where they have no right to be, and carelessly allow a train to strike them," the trial court did so, apparently, in recognition of the fact that this court has said in *St. Louis, etc., R. Co.* v. *Leathers*, 62 Ark. 235, and other cases, that the recent lookout statute does not do away with the defense of contributory negligence. But, in what follows, the court destroys or confuses all that it said in this statement. In the first place, the latter part of the instruction gives to a trespasser who is drunk an immunity from the charge of contributory negligence which a sober person would not enjoy; and in the same connection the court tells the jury that they might find from the evidence that if the trainmen had kept a constant lookout, as required by statute, they could have discovered Walters' intoxicated condition in time to prevent injuring him. That the trainmen kept the constant lookout in this case goes without controversy, unless all testimony is to be arbitrarily disbelieved. That it necessarily follows from the keeping of such

loookout that the trainmen could have discovered the intoxi-
cated condition of the deceased is not law, nor do the facts
in this case warrant such a conclusion.   Before this part of the
instruction should have been given, there should have been
something in the evidence going to show some conduct or move-
ment on the part of the deceased not usual in a person of
sound mind and in a normal condition, or some circumstance
showing that the condition of the deceased should have been
known in time for the trainmen to avoid the injury, before the
act of staggering, of which the trainmen speak as the first indi-
cation they saw of the drunkenness of the deceased; for the un-
disputed evidence is that as soon as they saw this "staggering"
they immediately applied the brakes, blew the whistle (which had
just ceased to blow for the station), and did everything they
could to avoid the accident.

   The trainmen testify that they saw the deceased walking
on the track approaching them some 200 or 300 yards ahead.
Considering the time of day,—about dusk,—when the engine
headlight had already been lighted for the night's run, this dis-
tance was sufficiently great to indicate that the proper lookout
was being kept, and certainly to show that deceased could and
would have got off in time had he been in proper condition; and
this they had a right reasonably to expect him to do at any time
before they saw his condition, especially as the whistle for the
station was sounded, as we take it, between the time they first saw
him and when they observed that he was drunk, or appeared to be
drunk.   The trainmen say that, from the time they first saw the
deceased, they saw nothing unusual in his conduct or move-
ments until, at a certain point and at a certain time, they saw him
apparently turn to get off the track, and then suddenly going
back on the track "staggering," and this indicated to them that
he was intoxicated, or something unusual was the matter with
him, and, being so impressed, they undertook to stop the train,
as stated.

   In *St. Louis, I. M. & S. R. Co.* v. *Leathers,* 62 Ark. 238, in
approval of the doctrine of *Johnson* v. *Stewart, ib.* 164, this
court said:   "We adhere to the ruling in that case respecting
the effect of the statute upon the doctrine of contributory negli-
gence.   In our opinion, it makes the failure to keep a constant

28

lookout, by the employees of a railroad company, negligence, and puts the burden upon the railroad company to establish the fact that it kept such lookout. This is the extent of the change made in the law by statute, which, in our opinion, does not, in such case as this, abrogate the doctrine of contributory negligence."

One of the doctrines not abrogated by the "lookout statute" is thus enumerated in *St. L., I. M. & S. R. Co.* v. *Wilkerson*, 46 Ark. 513: "If the employees of a railroad company in charge of its train see a man walking upon the track at a distance ahead sufficient to enable him to get out of the way before the train reaches him, and are not aware that he is deaf or insane, or from some other cause insensible of danger, or unable to get out of the way, they have a right to rely on human experience, and to presume that he will act upon the principles of common sense and motive of self-preservation common to mankind in general, and will get out of the way, and to go on without checking the speed of the train until they see he is not likely to get out of the way, when it would become their duty to give extra alarm by bell or whistle, and if that is not heeded, and it becomes apparent that he will not get out of the way, then, as a last resort, to check its speed, or stop the train, if possible, in time to avoid disaster. If, however, the man seen upon the track is known to be, or from his appearance gives them good reason to believe that he is, insane, or badly intoxicated, or otherwise insensible of danger, or unable to avoid it, they have no right to presume that he will get out of the way, but should act upon the hypothesis that he might not or would not, and they should use a proper degree of care to to avoid injuring or killing him. Failing in this, the railroad company would be responsible for damages if, by the use of such care, after becoming aware of his negligence, they could have avoided injuring him." In other words, this is the old doctrine, applied to the particular state of facts, that, while a railroad company owes no duty to a trespasser on its track, yet, after becoming aware of the trespasser's negligence and danger, it is the duty of the trainmen to do everything reasonably in their power to prevent injury. And, in treating of the phase of case where the insensibility to danger is produced

by intoxication, in the same case, this court said: "Lee had no legal right to be on that part of the railroad track of appellant where he was walking at the time he was killed. It was not a public crossing, and was no part of a public highway. It was made solely for the running of the cars and and train of appellant, and the fact that persons did walk upon it, however frequently, did not change its character, and convert it into a highway for footmen. Being on the private property of appellant, he was where he should not have been, and was bound to use every precaution, every diligence, every care, against any danger which might have happened to him there." "This was his duty. The fact that he was drunk did not excuse one [him] for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxication *cum periculis*. When they make themselves drunk, and in that condition wander upon a railroad track, and sustain an injury, they will not be heard to plead their intoxication as an answer to the charge of negligence, or as a reason why the railroad company should be held responsible to them for damages."

Had this man been sober, and not been discovered to be drunk, the defense of contributory negligence would have been without controversy, under the circumstances; and so it is that the testimony of the trainmen at last, to the effect that they believed the deceased was intoxicated, is all that justifies a discussion of the case. That being so, the only question of controverted fact was whether or not the trainmen saw his drunkenness in time to save the deceased by the use of proper effort and exertion. The proposition that they might have seen his condition before they did is not an established fact in the case, because there is no proof of prior indication of drunkenness, and no circumstances showing the condition of deceased might have been discovered sooner, and it is not a question of law, for it was stated thus by this court in *Johnson* v. *Stewart*, 62 Ark. 164: "But he seems to have overlooked the fact that the use of the words 'or by reasonable diligence might have been discovered' in the instruction asked by plaintiff in that case, and which are similar to the modifications added by

the court to the third request of appellant in this case, added a qualification so important and far-reaching as to even overturn the very doctrine of contributory negligence, which he was announcing; for it must be seen that, if this principle be sound, it sweeps away every duty and obligation of the plaintiff to exercise ordinary care for the protection of himself and property. He may be reckless of danger, and heedless of consequences, either deliberately or carelessly putting himself or property in front of moving trains; and yet, if it can be shown, in case of injury, that it might not have happened if the defendant had exercised ordinary care to discover the situation, the plaintiff may still recover. In other words, it matters not how careless or reckless the plaintiff may be in contributing to his own hurt, the defendant, nevertheless, is liable if he has also been negligent. This would be erroneous and unjust. The true rule, which no amount of amplification can simplify, is that whenever the negligence of the plaintiff contributes proximately to cause the injury of which he complains, the defendant is not liable."

In this case, and under the particular facts of it, there is no necessity of going to the extent of either of the decisions we have just quoted. All that is necessary to say is that, while the law puts the burden upon the railroad company of showing in any case that a constant lookout was kept, yet when that is shown to have been done, and when it is also shown that the plaintiff has been guilty of contributory negligence, it does not follow that the burden is any further upon the defendant. In other words, applying the rule to this case, where it is shown that the plaintiff was intoxicated, there is no burden on defendant to show when its servants discovered his condition, or under what state of facts they might have discovered it.

In this case there is no proof of circumstances from which the trainmen should have seen deceased's drunken condition, before they claim to have done so, and the jury had no right to assume the existence of any such circumstances; and still less was it right in the court to instruct them, in effect, that they could arbitrarily say that the trainmen might have seen the drunkenness of deceased sooner, by the exercise of due care, for no amount of care could discover indications of drunkenness

where none are shown to have appeared, or may not have appeared.

The judgment is reversed for the errors in the instruction named, and the cause remanded for a new hearing not inconsistent herewith.

BATTLE, J. (concurring.) I think the judgment of the circuit court should be reversed on account of the instructions held to be erroneous in the opinion of the court, and for no other reason.