FOURCHE RIVER VALLEY & INDIAN TERRITORY RAILWAY COMPANY v. TIPPETT.

Opinion delivered December 11, 1911.

1. TRIAL—REFUSAL TO DIRECT VERDICT.—Where the evidence was conflicting, it was not error to refuse to direct a verdict for the defendant. (Page 385)

2. MASTER AND SERVANT—PERSONAL INJURY CASE—INSTRUCTION.—Where the evidence, in a personal injury case, tended to prove that plaintiff's injuries were due either to plaintiff's negligence or to defendant's negligence, but not to their combined negligence, an instruction that if defendant's negligence was established as alleged the verdict should be in plaintiff's favor, unless the jury should find the injury to be the result of the plaintiff's negligence, was not objectionable for failure to point out the effect of the concurring negligence of plaintiff and defendant. (Page 385.)

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE DEFINED.—Contributory negligence is such an act or omission on the part of plaintiff amounting to the want of ordinary care as, concurring or co-operating with a negligent act of the defendant, is a proximate cause or occasion of the injury complained of. (Page 386.)

4. MASTER AND SERVANT—PERSONAL INJURIES—INSTRUCTION—OBJECTION.—Where the evidence in a personal injury case tended to prove that the injuries were due either to plaintiff's negligence or to defendant's negligence, the error of the court's charge speaking of plaintiff's negligence as contributory was not prejudicial, and if it had been the objection should have been specific. (Page 386.)

5. SAME—INSTRUCTION.—Where, in an action for personal injuries to an employee, the jury were directed to find for defendant if plaintiff's negligence "caused or contributed" to the injury, the words "caused" and "contributed" were synonymous. (Page 386.)

6. SAME—NEGLIGENCE—INSTRUCTION.—Where plaintiff, a brakeman, was injured by the train being improperly moved, as he alleged, without his orders, it was not error to instruct the jury to the effect that if the train was to be moved forward only when plaintiff gave a signal, but was moved forward without such signal, and that on account thereof plaintiff was injured while in the exercise of due care, the verdict should be for plaintiff. (Page 387.)

7. APPEAL AND ERROR—OBJECTION TO INSTRUCTION—WAIVER.—Where the fact that the plaintiff in a personal injury action was a minor was

not pointed out at the trial, defendant can not complain on appeal of an instruction authorizing plaintiff to recover for loss of earnings. (Page 387.)

8. DAMAGES—WHEN NOT EXCESSIVE.—Where before injury plaintiff, having an expectancy of 35 or 40 years, was making $65 per month, and thereby was crippled for life, and rendered unable to work at any occupation for which his mental and physical training fitted him, where he suffered great pain, which continued for two years and until the trial, an award of $10,000 is not excessive.   (Page 388.)

9. MASTER AND SERVANT—MASTER'S LIABILITY—INSTRUCTION.—Where defendant requested the court to charge that plaintiff could not recover unless he was at the time of injury engaged *where the conductor had directed him to work*, it was not error to add: "or where the conductor knowingly permitted him to work."   (Page 389.)

10. TRIAL—ARGUMENT.—It was not error for plaintiff's attorney to state in argument, after reciting the facts shown by the testimony of a certain witness, that it was for the jury to say why such witness quit defendant's employment and why defendant thereafter took him back. (Page 390.)

Appeal from Perry Circuit Court; *Robert J. Lea*, Judge; affirmed.

## STATEMENT BY THE COURT.

Appellant was engaged in operating log trains on its railway, and appellee was a brakeman on one of its trains. The log train consisted of an engine and tender, a string of log cars, and then a trailer and passenger coach.

Appellee testified that he was the rear brakeman, and that his duties were, when coming down hill, to help set and take off brakes. It was his duty to make the uncoupling from the passenger and log cars. The uncoupling on the day of the injury to appellee was made on a trestle about 18 or 20 feet high, and it was down grade from where the train was uncoupled to the switch. When they neared the place to uncouple, the engineer would shut off the steam and let the train roll; and when appellee pulled the pin and gave the signal, the engineer would pull out. When logs were so that he could, the appellee would sit down, but sometimes there was no room, and appellee had to stand on the platform of the trailer, and pull the pin and give the conductor the signal, and then the conductor would signal the engineer. During the two or three months that appellee had worked for the appellant on the log train, he had to do the uncoupling in the manner indicated probably one-third of the time. On the day of the accident the logs were loaded to the

end of the car, so that he could not stand on the end of the log car and do the uncoupling; he therefore pulled the pin from the trailer and intended to step across and get hold of the logs and holloa back to the conductor. He got his fingers on the logs, and the head end gave a jerk forward, causing him to fall between the cars on the track. After pulling the pin he stepped across to the platform at the end of the log car as he had always done, but he gave no signal to move forward, and didn't know whether the engineer received a signal or not, but he gave no signal to the conductor that he was ready for the train to move forward. He would not give a signal until he had got into a safe place; and when he gave one, it indicated that he was in a safe place, and the engineer was to go ahead; and when the engineer got the signal, he was authorized to assume that appellee was in a safe place and to move ahead if he wanted to. The appellee did the uncoupling, on the day he was injured, under directions of the conductor. ·

The above are substantially the facts testified to by appellee, upon which he based his allegations that he was injured by the negligence of the appellant while he was in the discharge of his duties as brakeman. After reciting substantially the above facts, the appellant alleges that, because of the logs projecting, he uncoupled from the trailer, and stepped across to the end of the log to take his position, and, while in the act of so doing, and before any signal was given, the log train was carelessly and negligently jerked forward with such rapidity that plaintiff was thrown from his position, and that he fell and was run over by the trailer and passenger car, and was greatly cut, bruised and mangled, and on account thereof suffered great pain of body and mind, and is now and will ever be a cripple, either as a result of the engineer moving forward without signal or the conductor giving a signal without right before he had secured his position. He prayed for damages in the sum of $20,000.

The appellant denied the allegations of the complaint, and set up that "appellee's injuries were contributed to and caused by his own negligence, and that it was his duty to work upon another part of the train, and that he was negligently and wrongfully occupying a position upon the trailer away from the place of his duties." The appellant alleged that plaintiff

"unnecessarily stood upon the trailer, and uncoupled the log section, and stepped to a place where he could be seen by the engineer, and signaled for the engineer to move the train, and in an effort to jump from the rear end of a log car he fell and was hurt; all of which was gross negligence, and contributed to, and was the sole cause of, his injury, and he was otherwise negligent, contributing to his injury."

There was testimony on behalf of appellant tending to show that appellee was head-brakeman on the train, and that it was not his duty to uncouple the cars, but the duty of the rear brakeman, and that the conductor had not ordered the appellee to uncouple the cars, and that he ran out and pulled the pin before anything could be done to stop him, and that the conductor tried to stop him, and that no one would uncouple the way appellee was attempting to do.

There was evidence tending to prove that appellee, after uncoupling the cars, gave the signal to move forward, and went to step from the trailer to the log car when he fell. The witness stated: "He stepped to one side, and gave the signal, and stepped back, and stepped on the log car, and fell beside the track."

The engineer testified that he received the signal to move forward, and the conductor testified that he didn't give any signal to move forward; and, if there was any given, he did not see it.

There was testimony also on behalf of appellant tending to show that there was no jerk or moving forward of the train, and that the speed of the train was not increased. There was some testimony to the effect that appellee had drunk intoxicating liquor on the day of his injury.

One witness testified that on the morning of the accident, between 8 and 9 o'clock, he saw the plaintiff on the train and gave him a drink. While there was some evidence tending to show that plaintiff had drunk intoxicating liquor on that day, there is no evidence that plaintiff was drunk at the time of the accident.

The witness J. Q. A. Tippett was asked if, in seeing different persons make the uncoupling, he observed the position they occupied, and in answer he said: "You can't do it always in the same position." He was also asked: "When the logs

don't stick out, what position does he get it?" and he answered: "If it is not sticking out, he can ride over here, and stoop over and pull the pin, and go on with the train. Sometimes they get over there, and turn around, and let the pin down. They don't do it two times the same way. They pull it here and sometimes there." Exceptions were properly saved.

The court granted appellee the following prayers for instructions:

"No. 1. The court instructs the jury that if they believe from the evidence that plaintiff was in the employ of the defendant company in the capacity of brakeman, and that it was his duty acting in that capacity to uncouple the log section from the trailer and passenger coach, and that he did so, and while doing so he was injured by the negligence and carelessness of the engineer in causing said train to jerk violently and move forward with unusual speed, your verdict will be for the plaintiff unless you should further find that such injury was the result of plaintiff's own negligence.

"No. 2. You are further instructed that if you find from the evidence that it was the duty of plaintiff to uncouple said cars, and that in making said uncoupling it was his duty to remain on the end of the log section of said train while it was being switched, and that in order to do so he had to gain his position on same before said train was permitted to move forward, and that by reason of the logs extending over the platform he had to remain upon the trailer, and that said forward movement was only to be made when either the conductor or engineer was signaled by plaintiff that he was ready, and you further find from the evidence that plaintiff did not give the signal for the train to move forward, but that the engineer moved forward without a signal to do so, and that, on account thereof, plaintiff, while in the exercise of due care, was thrown from said car and injured, your verdict will be for the plaintiff, unless you further find that plaintiff's injury was caused by his own negligence.

"No. 3. You are instructed that if you find for plaintiff you will assess his damages in such sum as you find from the evidence, as fair-minded and reasonable men believe will be a fair compensation to him for his pain and suffering, if any, on account of his injuries, his loss of time, if any, and such pain

and suffering as you believe from the evidence he may suffer in the future on account of such injuries, giving him such sum as you as fair-minded and reasonable men find to be fair and just between the parties.

"No. 4. You are further instructed that if you believe from the evidence that plaintiff was in the performance of his duty in making the uncoupling of the log section from the passenger coach and trailer, and if you further believe from the evidence that the engineer had no right to move forward without a signal to do so after said uncoupling was made, and that he did so without a signal, and the said movement was unknown to plaintiff, and that on account of said violent jerk or forward movement with unusual speed without notice to plaintiff and before he was ready for said forward movement, and that on account thereof plaintiff was thrown from said car while in the exercise of due care and injured, your verdict will be for plaintiff, unless you find that plaintiff's injuries were the result of his own negligence."

The appellant duly excepted to the ruling of the court in granting these prayers. The appellant in its prayers for instructions Nos. 6 and 11 asked the court to instruct the jury "that appellee to recover would have to prove his allegation that he was at his duties where he was directed to work by the conductor."

The court amended these prayers, making them read as follows: "Plaintiff can not recover, and your verdict should be for the defendant, unless the proof shows that he was at the time of the accident at work where the conductor had directed or knowingly permitted him to work, and that the accident was caused by the negligence heretofore referred to in these instructions."

The appellant duly excepted to the refusal of the court to grant its prayers as asked, and in giving the instructions in the form above set out.

Bob Wright, witness on behalf of appellant, among other things, testified that he was the rear brakeman of the train on which appellant was injured, and that it was his duty to uncouple the cars and not the duty of appellee. His testimony in this respect was corroborated by the testimony of the conductor Ritter and also by the testimony of Collins, the superintendent.

The counsel for appellee in the cross examination of witness Wright elicited the fact that appellee at the time of the accident had been working a little longer for appellant than Wright, and that Wright quit the employment soon after the accident and had recently been re-employed.

In his closing argument counsel for the appellee stated as follows: "Tippett had been at work nearly three months. Wright had been at work 18 days when he got hurt. Tippett had worked nearly three months, and this Wright only worked 18 days, and why didn't he continue to work after the accident? That is for you to guess, but he quit the same trip he was hurt. Why they took him back, why that is for you to guess."

Upon objections being made, the court stated: "There is nothing in the proof to warrant that." Counsel to the jury continued as follows: "You and I as reasonable and sensible men have a right to guess at these things." Upon further objection the court stated: "He has a right to argue common knowledge and common sense, and that is all right."

Among other instructions given on behalf of the appellant, the court, in its instruction No. 20, told the jury that "an employee is bound to obey the reasonable commands of his employer, and if while disobeying these commands he is injured, his employer is not liable; so if in this case you find fr m the evidence that the plaintiff was violating his instructions as to the place he was occupying or the work he was doing at the time he was hurt, and that he would not have been injured if he had not done so, your verdict should be for the defendant."

The court refused the appellant's prayer for instruction No. 19, which reads as follows: "You are instructed that there is no testimony in the case to warrant you in finding that the engineer caused the train to move forward without receiving a signal to do so."

Appellant below excepted to the ruling of the court in refusing the above prayer. Further facts will be stated in the opinion.

The jury returned a verdict in favor of appellee in the sum of $10,000. Judgment was entered against appellant for that sum, and it duly prosecutes this appeal.

*Sellers & Sellers,* for appellant.

1.   Under the pleadings and proof appellee was not entitled to recover any amount, and the court should have directed a verdict for appellant.   The burden was upon ap ellee to show by the evidence that he was injured by the negligence complained of.   The negligence complained of was that the train was negligently jerked forward at a time when he had pulled the pin from the trailer because there was no room on the platform and when he was in the act of stepping over to the platform.   The case was tried and presented to the jury on the theory that the engineer suddenly moved the train without a signal, and appellee's instructions were on that theory alone.   The evidence must sustain a finding that the engineer negligently jerked the train forward without a signal, or the case should be reversed.   Moreover, a verdict should have been directed on the proof of plaintiff's contributory negligence, and in addition his assumption of the risk in reaching over to uncouple after he saw there was no room on the platform, where he should have been.   134 S. W. 638; White, Pers. Injuries, § 301.

2.   The four instructions given at appellee's request do not state the law correctly.   They omit to state the last chance rule, and do not correctly state the rule of comparative negligence.   In this State the rule is that a plaintiff can not recover for the negligence of another if his own negligence has either *caused or contributed* to the injury complained of.   51 Ark. 467, 475;   91 Ark. 102, and cases cited; 131 S. W. 945; 80 Ark. 5;   36 Ark. 50;   46 Ark. 399;   49 S. W. 323, 325;   31 S. W. 885;   40 S. W. 386;   130 S. W. 709;   40 Ark. 322;   1 Thompson on Neg. § 217;   *Id.* § 464;   39 Am. & Eng. Rd. Cas. 444; 74 Vt. 125;   119 Wis. 649;   51 So. 846;   87 S. W. 79.

The third instruction in the latter part ignores the evidence and allows the jury to give the plaintiff, not what they find from the evidence to be a compensation for his injuries, but what they think would be fair and just *between the parties,* according to their way of seeing it.   97 S. W. 1127;   90 N. E. 76.   The instruction is also abstract and erroneous in charging the jury that they could allow the plaintiff damages for "loss of time, if any, and his diminished capacity to earn money in the future, if any, and such pain and suffering as you believe

from· the evidence he *may* suffer in the future on account of such injuries." There is no allegation in the complaint nor any issue made as to loss of time, diminished capacity to earn money, or pain or suffering in the future. 68 Ark. 167; 85 Ark. 425; 82 Ark. 562; 78 Ark. 553; 177 N. Y. 59; 96 N. Y. 305; 4 Elliott on Railroads, § 1884; 91 Pac. 437; 3 Brickwood's Sackett on Instructions, § 3573; *Id.* 3575; 80 S. W. 282; 51 Am. St. 917; 120 N. W. 306; 46 Am. St. 854; 71 S. W. 905; 121 Ill. App. 334; 104 S. W. 709; 9 Am. Cas. (Neb.) 1222; *Id.* (S. C.) 1050; 158 N. Y. 254, 53 N. E. 22; 73 Wis. 147; 90 Ky. 369; 106 Ia. 94; 72 Minn. 291; 8 Am. & Eng. Enc. of L. (2 ed.), 643; 13 Cyc. 138; 104 Pac. 325; 143 Fed. 946; 1 Sedgwick on Damages (8 ed.), § 172; 3 Sutherland, Damages, § 944; 30 L. R. A. 507; 6 Thompson on Neg. § 7318.

Instruction 2 is also erroneous in that it authorized a recovery without proof of negligence. 134 S. W. 202; 3 Brickwood's Sackett on Instructions, § 4032; 61 Ill. App. 464; 133 S. W. 499; *Id.* 819; *Id.* 816; 63 Ark. 65; 80 Ark. 68; 112 S. W. 30; 8 L. R. A. 765; 148 Ill. App. 158.

3.   The court erred in modifying instructions 6 and 11. There was neither allegation nor proof that the conductor "knowingly permitted" appellee to do the uncoupling. 65 S. W. 835; 63 Fed. 228; 14 Lea (Tenn.) 374; 13 Pac. 144; 34 Pac. 423; 132 S. W. 212; 70 Ark. 603; 41 Ark. 542; 88 Ark. 26; 135 S. W. (Ark.) 455; 47 Ind. 435; 53 Ga. 630; 106 Ga. 796; 111 Ga. 460; 48 Minn. 109; 3 Elliott on Railroads, § 1303; 150 Mass. 362.

4.   The case should be reversed for the misconduct of appellee's attorney in commenting upon the witness Wright, who was not impeached or discredited, in a covert and damaging way amounting to charging him with both bribery and perjury. Counsel went out of the record in order to make these comments, and his conduct in so doing was highly prejudicial. 62 Ark. 126; 22 Ia. 253; 61 Ark. 130; 62 Ark. 516; 71 Ark. 415; 74 Ark. 256; 70 Ark. 306, and cases cited.

*John D. Shackleford,* for appellee.

The instructions complained of are correct under the pleadings and proof, the verdict is sustained by the evidence and is not excessive, but warranted by the testimony, and his comments on the testimony were legitimate.

WOOD, J., (after stating the facts). 1. The court did not err in refusing to direct a verdict in favor of appellant. While the testimony on behalf of appellant was directly in conflict with that of appellee, it was the province of the jury to accept and believe the testimony of appellee rather than the testimony of the witnesses on behalf of appellant, and the only question here is, was the evidence sufficient to sustain a verdict? We are of the opinion that the testimony of appellee, which the jury believed, was sufficient to show that the injury to appellee was caused by the negligence of appellant, as set forth in the complaint.

2. It was not error for the court to instruct the jury that if the negligence of appellant was established as alleged the verdict should be in favor of appellee unless "they should further find that such injury was the result of plaintiff's own negligence." For, according to the testimony adduced on behalf of appellant, the injury to appellee was caused wholly through his own negligence. In other words, the testimony on behalf of appellant tended to show that the injury to appellee was caused by his own negligence, and not through any negligence whatever on the part of appellant. On the other hand, the testimony on behalf of appellee tended to show that his injury was caused solely through the negligence of appellant. The testimony does not warrant the conclusion that there was any concurring negligence on the part of appellant and appellee, whereby the injury to the latter resulted.

This is not a case where the jury would be warranted in finding that the injury to appellee was the result of the combined or concurring negligence of both the appellant and appellee, but it is a case where the proximate and only cause of the injury was the separate and independent negligence of appellant, or else the separate and independent negligence of appellee. In such cases it is not error for the court to give an instruction in the form of the instructions above mentioned. The doctrine of contributory negligence, strictly speaking, has no place where there is not negligence on both sides. As was said by this court in *St. Louis, I. M. & S. Ry. Co.* v. *Freeman,* 36 Ark. 41, "it is invoked to neutralize a right on plaintiff's part which would otherwise exist, and from its nature it makes a good defense against actual negligence of defendant."

Contributory negligence "in its legal signification is such an act of omission on part of plaintiff amounting to the want of ordinary care as concurring or co-operating with a negligent act of the defendant is a proximate cause or occasion of the injury complained of." *International & G. N. Rd. Co.* v. *Schubert*, 130 S. W. 709.

This definition of contributory negligence has been often approved, and the doctrine frequently applied by this court. *St. Louis, I. M. & S. Ry. Co.* v. *Rice*, 51 Ark. 467; *Johnson* v. *Stewart*, 62 Ark. 164; *St. Louis, I. M. & S. Ry. Co.* v. *Leathers*, 62 Ark. 235; *St. Louis, I. M. & S. Ry. Co.* v. *Jordan*, 65 Ark. 429; *St. Louis S. W. Rd. Co.* v. *Cochran*, 77 Ark. 398; *Southern Express Co.* v. *Hill*, 84 Ark. 368; *Chicago, R. I. & P. Ry. Co.* v. *Smith*, 96 Ark. 524; *Curtis* v. *St. Louis & S. F. Rd. Co.*, 96 Ark. 394; *Warren Vehicle Co.* v. *Siggs*, 91 Ark. 102.

Of course, in cases where the evidence tends to show negligence on part of the defendant, and also negligence on part of the plaintiff, which combined or concurring negligence produced the injury complained of, it will be error to tell the jury that they could not find a verdict in favor of the defendant unless the evidence shows that the injury was the result of plaintiff's own negligence. For in such cases it is sufficient to warrant a verdict in favor of the defendant if the plaintiff's negligence was not the sole cause of the injury, but only the concurring cause, or a cause which, combining with the negligence of the defendant, contributes to produce the injury complained of. See numerous authorities cited in brief of the learned counsel for appellant. But these authorities can have no application to the case at bar for the reasons above stated. The evidence shows that there was no combined or concurring negligence on part of appellant and appellee, but, on the contrary, that the injury was the result solely of appellee's own negligence, or else the result solely of the negligence of appellant.

The instructions on behalf of appellant in which the court told the jury that they should find for the defendant if the negligence of the plaintiff "caused" or "contributed" to his injury are not in conflict with the above prayers on behalf of the appellee, for the word "contributed," as used in these instructions on behalf of the appellant, is synonymous with the word

"caused."   If not, the use of the word "contributed" is abstract, erroneously used, and therefore the instructions were more favorable to appellant than it had a right to ask, and it can not complain.

The instructions given on behalf of appellee and those given on behalf of appellant concerning the "negligence" or "contributory negligence" of the appellee are not in conflict. It is manifest, when these instructions are taken together, that the court submitted to the jury the alleged defense of appellant as to the negligence or contributory negligence of appellee as set up in its answer.   The negligence of the plaintiff that "caused or contributed" to the injury as used in the prayers of the appellant is the same as the negligence of the plaintiff that "caused" the injury as used in the prayers of the appellee. The court intended that these expressions as used in the above prayers should be convertible terms.

If the appellant at the time of the trial had in mind that the instructions using these expressions were in conflict, it was its duty to have called the attention of the court specifically to that fact.   It can not be said that the prayers of plaintiff (appellee) were inherently erroneous.   It is peculiarly a case, under the circumstances, that called for a specific objection to these prayers if appellant desired to get the benefit of the contention that it now makes that such prayers were in conflict with those given on the same subject and at its instance. A general objection to the prayers of appellee would not raise the point in the mind of the court, and to take advantage of it here for the first time would be allowing the appellant the benefit of a "masked battery."   The appellant got the benefit of its defense of negligence or contributory negligence, as it was set up in its answer, before the jury, and we can not say that the instructions were calculated, under the evidence, to confuse or misguide them.   *St. Louis, I. M. & S. Ry. Co.* v. *Rogers,* 93 Ark. 564;   *Arkansas Midland Rd. Co.* v. *Rambo,* 90 Ark. 108; *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255.

Instruction No. 2, *supra,* did not authorize a recovery without proof of negligence.   For, according to the testimony of appellee, the engineer could only move the train forward when the plaintiff gave the conductor or the engineer the signal that he was ready to go; and if therefore the engineer moved

the train forward without such a signal, or if the conductor gave the engineer such a signal before the plaintiff indicated that he was ready, and the engineer moved the train, then such movement was done negligently, and it was not necessary for the instruction to say so in express terms, but it was sufficient to leave the jury to so find if they found such to be the fact from the evidence. The instruction requires them to find from the evidence a state of facts from which negligence necessarily results before they were authorized to return a verdict in favor of the appellee.

There is much verbiage in the appellee's prayer for instruction No. 3 by way of caution to the jury which was entirely unnecessary and in bad taste and form, making the instruction one that could not be approved as a precedent; but this verbiage did not render the instruction erroneous. Stripped of this verbiage, the instruction told the jury that if they found for the plaintiff they should assess his damages in such sum as they found from the evidence would be a fair compensation for his present and future pain and suffering, his loss of time and diminished earning capacity resulting from the injuries he had received. These were proper elements of damage fairly deducible from the complaint and the testimony on behalf of appellee; and, as the jury were told to base their findings in regard to these elements upon the evidence, the instruction was not erroneous. It is contended by the appellant that, inasmuch as appellee was a minor when the injury occurred, and when the trial was had, the earnings belong to the father of appellee, and that therefore the instruction was erroneous in allowing the jury to consider the loss of earnings before appellee reached his majority as a proper element of damage to him. But the appellant did not make any specific objection on this account, and did not in any way raise the question in the court below, and it can not get the benefit of any such objection made here for the first time.

3. In this connection, while we are considering the question of damages, we will dispose of appellant's assignment of error that the "verdict was excessive." Appellee was about twenty years old at the time of the trial. He had an expectancy of 35 or 40 years. Before his injury he was making $2.25 per day, or from $63.00 to $65.00 per month. The bone in his

leg by reason of the accident was crushed, so that it made that limb 2 or 2½ inches shorter than the other. Appellee was thereby rendered a cripple for life. He could not pursue the occupation he was engaged in at the time of his injury, and he was not able to do carpentering, farming or work about a saw mill. He could not work at other occupations for which his mental and physical training fitted him. The pain he suffered at the time of the accident and while he was being treated afterwards was most intense. He testified that the treatment nearly killed him, that the pain was so great that he could not sleep for three or four days and nights. His foot at the time was practically cut off, the bones were crushed and a part torn away. After his foot began healing, the surgeon found it necessary to open it three different times and take out pieces of bone. He testified that he still suffered at the time of the trial, and that in bad weather there was a dead ache in his foot, and in cold weather he had to stay in the house on account of the pain. It pained him so much that he could hardly stand it. It had been over two years from the time of the accident to the time of his testifying at the trial, and he was then still suffering from the injury.

We are of the opinion that under these circumstances a verdict for $10,000 is not excessive.

.4. The court did not err in modifying appellant's prayers for instructions Nos. 6 and 11, by inserting therein the words "knowingly permitted."

Appellee testified that he got his instructions from the conductor. He says that on the occasion of the accident Ed Ritter, conductor, when he went to the end of the car, said: "Get out and cut them off, Tip" (the conductor called him Tip). "He stood there a minute, and the conductor said: 'Cut them off if you are going to; if you are going to cut them off, do it, or I will get somebody that will.'" Appellee says "he was talking to some one, and was slow, and that caused the conductor to tell him the second time to uncouple."

The appellee further testified that he was in his proper place when the conductor directed him to uncouple. There was therefore evidence tending to prove that the conductor not only "knowingly permitted," but that he expressly directed appellee to do the uncoupling. In view of this evidence, the

modification made by the court to the instructions and the giving of the same as modified was not error. The court did not err in refusing prayer for instruction No. 19 to the effect that there was no testimony to warrant a finding that the engineer caused the train to move forward without a signal. It was a question for the jury under the evidence as to whether or not the engineer moved forward without a signal. The testimony on behalf of the appellee tended to show that he had given no signal to the engineer or to the conductor to move forward, and it was in evidence that it was the duty of the engineer not to move the train until the rear brakeman had given a signal either to the conductor or the engineer to move the same forward.

5. The remarks of counsel for appellee in his closing argument to the jury of which appellant complained were not statements of fact outside the record. The attorney, after reciting the facts shown by the testimony of Wright, simply told the jury that it was for them to say why the witness Wright quit after appellee was injured, and why the appellant took him back. His whole statement can not be construed as a statement of facts not in evidence, nor can it be considered an improper comment upon the facts in evidence showing the relation that the appellant sustained to the witness Wright before and after the accident occurred. The attorney did not even venture an opinion himself, but, reciting the facts in evidence, declared that it was for the jury to say, or "guess," as he expressed it, what inferences should be drawn from them. That was the purport of his remarks, as we construe them, and they were not improper.

6. We have examined the other assignments urged for reversing the judgment, and find no error in the rulings of the court prejudicial to appellant. It has had a fair trial, and the judgment must therefore be affirmed.