THE RAILWAYS ICE COMPANY *v.* HOWELL.

Opinion delivered February 22, 1915.

1. MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE TO WORK—DEGREE OF CARE.—A master is bound to exercise ordinary care to furnish his servants a safe place in which to work, and to make reasonable inspection from time to time to see that such place is kept safe; the degree of care required of the master, being tested by the circumstances surrounding the character of the employment and the particular facts of the case.

2. MASTER AND SERVANT—INJURY TO SERVANT—UNSAFE PLACE TO WORK—QUESTION FOR JURY.—Where defendant's servant was sent on to an elevated platform to remove some condenser pipes therefrom, and fell, and was killed by reason of a defective railing; *held,* when defendant's foreman knew of the defect, and failed to warn deceased of the danger, the issues of defendant's negligence, of assumption of risk and contributory negligence of the deceased, were questions of fact to be submitted to the jury for determination.

3. MASTER AND SERVANT—INJURY TO SERVANT—CONCURRENT CAUSES—NEGLIGENCE.—Deceased was killed by falling from a defective platform, to which he was sent by the foreman, who knew of the defect, but failed to warn the deceased. *Held,* under the facts, the jury might find the injury to be caused by the defective condition of the platform, together with the concurring negligence of the foreman in failing to notify deceased of the defect, and an instruction held correct which told the jury, that if they found that the defective condition of the platform was one of the causes which, concurring with another, produced the injury, that the defendant master would be liable in damages.

4. MASTER AND SERVANT—INJURY TO SERVANT—AUTHORITY OF FOREMAN—APPOINTMENT.—Deceased was killed by the falling of a defective platform to which he had been sent to work by one H., who testified that he was defendant's foreman. One F., who had charge of the work being done, testified that he had not appointed H. foreman. *Held,* whether H. had been appointed was a question for the jury.

5. APPEAL AND ERROR—MOTION FOR NEW TRIAL—ASSIGNMENT OF ERRORS.—Errors not set out in the motion for a new trial, will not be considered on appeal.

6.  DAMAGES—DEATH—AMOUNT.—Deceased was killed in an accident
     resulting from defendant's negligence; he was rendered uncon-
     scious and suffered no pain, therefore the damages recoverable were
     limited to the amount of contribution to his family. *Held*, under
     the facts, a verdict of $14,355.75 was excessive. and the same will
     be reduced to $12,000, being the amount that would purchase an
     annuity equal to the amount of his contribution to his family, with
     interest from the date of death.

Appeal from Crittenden Circuit Court; *W. J. Driver,*
Judge; modified and affirmed.

STATEMENT BY THE COURT.

This is an action brought by Verney V. Howell, as
a widow, in behalf of herself and the next of kin of W. M.
Howell, against appellant to recover damages for the
death of her husband, which occurred on the 11th day of
December, 1911.  The facts as shown by the appellant,
so far as necessary to determine the issue raised by the
appeal, are substantially as follows:

T. Howell testified:  My brother, W. M. Howell,
was killed by falling from a platform twenty-six feet
high while engaged in the work of tearing down and dis-
mantling an ice plant belonging to the appellant.  The
ice plant was situated right on the right-of-way of the
railway company at the town of Marion, in Crittenden
County, Arkansas, and had formerly belonged to the
Frisco Ice Company, of which corporation I was a mem-
ber.  That corporation had sold the plant to the appel-
lant, the Railways Ice Company, and that company de-
siring to erect a larger plant employed my brother, my-
self and others to engage in the work of dismantling it
and tearing it down.

I. E. Freeman was in general charge of the work
for appellant and designated me as foreman.  On the
morning the injury occurred we were engaged in taking
down the condensers.  As foreman I told my brother to
tear down all the pipes in that building.  The building
was twenty-six feet high, and after taking down some of
the pipes in the rear part of the building, he went up
to the top platform to take down the pipes there.  The

platform was about two feet wide and there was a banister around it of planks two inches thick by three inches wide. These two-by-fours were nailed down on upright posts of the same dimensions and had been placed there to keep anyone from falling while at work on the platform. My brother had not been at work there more than twenty minutes before he fell from the platform and was injured so severely that he died twelve hours thereafter.

The railing which gave way and caused him to fall from the platform was made of green gum timber and had been there about a year. There was an old crack in the timber and it ran angling from one end of it a distance of about three feet. I knew the crack was there and had known it for some time but did not think to tell my brother about it when I told him to go up there and take down the pipes. Before the corporation of which I was a member sold the plant to the appellant I had been day engineer, and my duties required me to go up to the top of the tower frequently to inspect the condenser pipes and in that way I learned that the railing had a crack in it.

My brother worked for the old company before it sold out to the appellant, but he worked at night and did not have occasion to go up to the top platform where he was injured.

Pink McMillan, the only eye witness to the injury, testified: I was helping Mr. Howell take the pipes down the day he was killed. He had been working down in the engine room, but in the afternoon we went up to the top of the tower to take down some condenser pipe. We had taken down a pipe and had commenced to shove it off the banister. I placed one end on the banister and was letting it down and Mr. Howell was pushing the pipe from him and in doing so he either stepped to the banister or leaned against it, I don't know exactly which, and it gave way and broke. This caused him to fall to the ground. I afterward examined the railing where it broke and found an old seasoned sun-crack in it, beginning at the end and angling crossways about two feet or

maybe three feet. I didn't notice the crack in it when I went up there to work. When Mr. Howell fell the banister broke and the middle post was partly torn loose from the platform. I noticed it hanging there afterward by some nails. After Mr. Howell was taken away I continued working up there until the pipes were all down and the tower dismantled.

Other evidence for the plaintiff tended to show that Howell was twenty-six years of age, that he was in good health at the time he received his injuries, and that his life expectancy was thirty-eight years. He had a wife and three small children, and was making $75 per month at the time of his death. He had been engaged in farming and was also a good engineer, and had worked at that occupation for some time before he was killed.

I. E. Freeman, for the appellant, testified:

I have been in the employment of the Railways Ice Company for about two years. At the time of the accident to Mr. Howell I was at the plant and was local manager and foreman. I had the employment of the hands and directed their work. I did not see the accident. I never appointed or authorized T. Howell to act as foreman. He did not have any authority whatever to direct his brother about the work.

Other evidence for the defendant tended to show that Freeman had full charge of the work of tearing down the old ice plant and that he was not authorized to employ any man as foreman to assume charge or control of the plant. It was also shown that Freeman's duties were general and that he had entire charge and control of the work of dismantling the plant, and was empowered to hire such labor as was necessary and was to use his own judgment in dismantling the plant and taking care of the material preparatory to the erection of the new structure.

It was also shown that neither Freeman nor any of the higher officers of the company knew about the defect in the railing.

Other testimony will be referred to in the opinion.

The jury returned a verdict for $14,355.75, and from the judgment rendered appellant has duly prosecuted an appeal to this court.

*A. B. Shafer,* for appellant.

1. Under the facts in evidence appellant is not liable, and it should have been so declared as a matter of law. The rule making it the duty of the master to furnish a safe place does not apply where the servant is employed for the express purpose of assisting in the demolition of the plant, to the same degree as it would apply if the plant was being operated for manufacturing purposes. Where the work of the servant necessarily changes the character of the place as the work progresses, the duty of care for the safety of the place rests upon the servant, and he assumes the risks incident to the progress of the work of demolition.

Moreover, in this case, the deceased, being left entirely to pursue his own course and select his own methods in the work, was under the duty to examine the rail for his own protection before subjecting it to an unintended extra-hazardous use. 76 Ark. 69; 79 Ark. 76; 97 Ark. 486; 90 Ark. 387; 69 S. E. 416; 4 Thompson, Negligence, § 3979; White's Supp. § 3979; 3 Labatt, Master & Servant (2 ed.), § 924; 94 S. W. 304; 124 S. W. 608; 54 Ill. App. 578.

2. The court erred in adding to the verdict interest from the date of the death of Howell. Interest should run only from the date of the judgment. 13 Cyc. 83; *Id.* 86, 87; 17 S. W. 882; 100 S. W. 76; 197 Fed. 1016.

3. The court erred in modifying and giving as modified instruction 11, requested by appellant. It is a well settled rule in this State that the alleged negligence must be the proximate and efficient cause of the injury. 48 S. W. (Ark.) 898; 133 *Id.* 816; 113 *Id.* 647; 115 *Id.* 396; 96 *Id.* 152; 110 *Id.* 1037; 120 *Id.* 984; 147 *Id.* 473; 134 *Id.* 1189; 151 *Id.* 262. See, also, 155 S. W. (Mo.) 1070, 1078; 77 S. E. (N. C.) 417; 86 Atl. 292; 51 So. 959; 24 L. E. (U. S.) 256; 53 *Id.* 671; 26 Cyc. 1092, par. 5; *Id.* 1097, B-1; 65 Fed. 48; 105 Ark. 161.

Instruction 7 given by the court is erroneous in that it does not charge the jury that the burden was on appellee to show that the deceased did not know or have reason to believe that Freeman did not have authority to appoint T. Howell as foreman.

4.   The verdict is excessive.   At the time of his death deceased was earning $75 per month.   If he contributed one-half to the support of his family other than himself, this would amount to about $450 per annum, the present value of which, at 6 per cent, on the basis of his expectancy would amount to about $6,000.

*J. T. Coston,* for appellee.

1.   This court will not consider alleged errors in instructions which were not set out as grounds for a new trial in the motion for new trial.   170 S. W. (Ark.) 483; 34 Ark. 423.

Instruction 7 was the only instruction, the giving of which appellant assigned as error in its motion for new trial, and as to that, appellant in effect concedes that it is correct so far as it goes.   If it did not go far enough as to the burden of proof, appellant is at fault in not presenting a specific objection, and can not complain.   97 S. W. 287; 56 Ark. 602; 60 Ark. 619; 94 Fed. 781.

Instruction 11 requested by appellant was properly amended by the court by inserting the words "or was contributed to."   113 Ark. 45; 3 Labatt, Master & Servant, 813; 54 Ark. 299; 67 Ark. 8; 113 S. W. (Ark.) 359; 203 U. S. 473; 90 Ark. 326.

2.   It was not a part of the duty of deceased to dismantle the platform.   He lost his life on account of a defect in the railing around the platform, and not on account of any defect in the condensing tower, where he was set to work; and the defect in the platform or railing did not arise in the progress of dismantling the tower.   Yet, if he had been engaged in dismantling the platform, it was, nevertheless, the duty of appellant to warn him.   141 App. Div. 776; 56 Ark. 213; 114 S. W. (Ark.) 699; 3 Labatt, Master & Servant, § 2475; 158 Fed. 780; 86 Pac. 647; 117 Pac. 753; 82 N. E. 241; 81

Pac. 478; 88 U. S. 984; 90 N. E. 542; 133 S. W. 1132; 94 S. W. 305.

3.   Where the court amends a verdict, and the jury adopts it as its verdict while still in the box, there is no irregularity, but the proceeding is entirely proper. 140 S. W. (Ark.) 263.   And interest, in this case, was properly added to run from the date of the injury.   88 S. W. (Ark.) 999.

4.   The verdict was not excessive.   He left a wife and three children at his death, and his expectancy was thirty-eight years.   He was earning and contributing to the support of his family about $910 per annum.   167 S. W. 93; 171 S. W. 99; 88 S. W. 999.

HART, J., (after stating the facts).   It is earnestly insisted by counsel for appellant that there is not sufficient evidence to warrant the verdict.

(1)   It is well settled that a master is bound to exercise ordinary care to furnish his servants a safe place in which to work, and to make reasonable inspection from time to time to see that such place is kept safe; the degree of care being tested by the circumstances surrounding the character of the employment and the particular facts of the case.   *Ozan Lumber Company* v. *Bryan*, 90 Ark. 223.

There is an exception to this rule in some instances where a servant is employed in tearing down a building since the work of removal is one in which each part of the structure in turn is rendered insecure.   This every workman understands.

In recognition of this principle, this court, in the case of *Grayson-McLeod Lumber Company* v. *Carter*, 76 Ark. 69, held that the rule that a master is required to furnish his servant a safe place in which to work is not applicable where the servant is employed to erect or tear down a structure as a servant assumes the hazards of such employment.   In that case the servant was engaged in tearing down a bridge.   His place of work continually changed, and the work of tearing down the bridge sometimes rendered his place of work more insecure.   Speak-

ing with reference to the master's duties to him, the court said:

"There was no duty to furnish him a safe place in which to work, since his employment made it his duty to tear down and to change and destroy his places for work, and to make them safe or unsafe, as his work rendered them; and was such as to place it out of the power of his employer to perform such duty."

According to the testimony adduced in favor of appellee, this is not a case where the servant was engaged in dismantling a building, and the unsafe conditions from which the injury resulted arose from or were incidental to the work thus undertaken. The testimony adduced in favor of appellee tends to show that his place of work was not rendered insecure by any act of his. The master owed him the duty to exercise ordinary care to provide him a safe place to work at the start. He was directed to go to the top of the tower for the purpose of taking down the condenser pipes. There was a platform there about two feet wide with a banister around it upon which it was necessary for him to stand, while engaged in performing his work. The banister had a sun crack in it which rendered it unsafe. This fact was known to the foreman of appellant, and was unknown to decedent, or, at least, the jury might legitimately have drawn that inference from the testimony. The brother of the decedent testified that he was the foreman of the plant and that he knew of the defective condition of the banisters. He said that he ordered his brother to go up there to work, but did not notify him of the defect in the banister because he did not think of it at the time. It is true the decedent had worked for the company which sold the plant to appellant, but he worked in the night time, and according to the testimony of his brother, his duties did not require him to go up on the platform in question.

The only eye-witness to the accident, the man who went up to work with him, says that he had not been up there more than twenty minutes when the decedent fell

from the platform. He also stated that he himself did not notice the suncrack in the banister when he went up there to work, or before the injury occurred. He stated that at the time the injury occurred, they were engaged in pushing off over the platform a condenser pipe which weighed about fifty pounds, and that decedent, in pushing it off, either stepped or leaned against the banister, and that on account of the defect in the banister, it broke and precipitated him to the ground, thereby causing the injuries which resulted in his death.

(2)    Under these circumstances, we think that the question of the negligence of the appellant, the assumption of risk and the contributory negligence of the decedent were questions of fact to be submitted to the jury for its determination.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Corman,* 92 Ark. 102, the court held that a servant is entitled to recover for the negligence of the master, even though the negligence of a fellow-servant concurred therein if the injury would not have occurred but for the master's negligence.

It is next insisted by counsel for appellant that the court erred in modifying instruction No. 11, asked by it. That instruction is as follows: "You are instructed that the law presumed that the master did his duty, and did not know of any defects, if any existed, in the guide rail around the platform. It is incumbent upon the plaintiff to show by a preponderance of the evidence that the death of Howell was caused solely or was contributed to by reason of a defect in the guide rail, and that this defect in such guide rail was known to the defendant, or that such defect could have been known to the defendant by the exercise of ordinary care, and that such defect was not known to Howell."

The modification consisted in adding the words, "or was contributed to," after the words, "was caused solely."

The instruction, as asked by appellant, was erroneous. It made the liability of appellant to appellee de-

pend upon whether the death of Howell was caused solely by reason of the defect in the guide rail or banister.

In the case of *Chicago Mill & Lbr. Co.* v. *Cooper,* 90 Ark. 326, the court held that where several proximate causes contributed to a casualty, and each is an efficient cause without which the casualty would not have happened, it may be attributed to all of the causes; but it can not be attributed to a cause without whose co-operation the accident would not have happened.

(3)    As we have already seen, the testimony on the part of appellee tended to show that the guide rail or banister was in a defective condition at the time Howell went up there to work, and that he went there to work at the direction of the foreman of appellant without any warning that the defective condition of the banister existed. It will be remembered that the defective condition of the banister had existed for some time prior to the happening of the accident, and that this fact was known to the foreman of appellant, but was not known to the deceased, Howell. Under this state of facts, the jury might have found that the proximate cause of the injury was the defective condition of the guide rail, together with the concurring negligence of the foreman in failing to inform Howell of its defective condition. It is evident that the court intended to remedy this defect in the instruction by the use of the words, "or was contribued to," immediately following the words, "was caused solely by." We think it manifest that the court, by the use of the added words, intended to instruct the jury that if it found that a defective condition of the guide rail was one of the causes which, concurring with another, produced the injury, the appellant would be liable in damages to appellee. See *Fourche River Valley & I. T. Ry. Co.* v. *Tippett,* 101 Ark. 376.

It is next insisted that the court erred in giving instruction No. 7, which is as follows:

"If you find from a preponderance of the evidence, that Freeman appointed T. Howell as foreman, he was for the purpose of this case the foreman, whether he had

authority to appoint Howell foreman or not, unless you further find that the deceased knew or had reason to believe that Freeman had no such authority, and the burden of establishing that T. Howell was the foreman, devolved upon plaintiff.''

(4) We do not think there was any error in giving this instruction. Under the facts in this case it was not necessary that the court should use the words ''whether he had authority to appoint Howell foreman or not,'' for the undisputed evidence shows that Freeman was the local manager of appellant, and had the sole and exclusive charge of dismantling the ice plant. As such, he had authority to appoint T. Howell as foreman, and the only disputed issue of fact was as to whether or not he did appoint Howell as such foreman. T. Howell affirmed that Freeman had appointed him foreman and Freeman denied that he did so. This question of fact was properly submitted to the jury in this and other instructions given by the court, and no prejudice could have resulted to the appellant from the use of the words which we have just quoted, because under the law if Freeman had sole charge of tearing down the ice plant and full authority to employ servants necessary for that purpose, with authority to discharge them at will, this authority carried with it the power to appoint T. Howell as foreman; at least in the absence of notice to Howell, that he did not have such authority.

(5) Next it is insisted by counsel for appellant that the court erred in other instructions given to the jury at the request of appellee, or of its own motion. We do not deem it necessary to set out or discuss these assignments of error. The record shows that appellant did not make them grounds of its motion for a new trial and, not having done so, under the settled rules of the court, it will be deemed to have waived them. This is so well settled by the repeated and uniform decisions of this court that it is not necessary to cite any cases in support of it.

Finally it is insisted by counsel for appellant that the verdict is excessive, and in this claim we think they

are correct. The decedent was rendered unconscious by his fall. He lived twelve hours thereafter, but never regained consciousness. The only element of damages claimed was the amount of contribution to be made by him to his family. The record shows that he was twenty-six years of age at the time of the accident, and that his wife was about the same age, and that he had three little children.

(6) He earned a salary of $75 per month, was a good engineer and was of sober and industrious habits. It it not shown that he possessed any means outside of his $75 per month earned by him at the time of his accident. In the very nature of things he could not have contributed the whole amount to his family as contended by counsel for appellees, but we think the jury might have fairly inferred from the testimony that he did contribute three-fourths of this amount to the support of his family. His life expectancy was thirty-eight years, as shown by the mortality tables and the present value of an annuity at his age would be worth something like $8,000. He was an active and energetic young man. His chances of earning a greater salary in the near future were good. He was killed three years before the trial, and under the rule in *St. Louis, I. M. & S. Ry. Co.* v. *Cleere,* 76 Ark. 377, the jury might have allowed interest at 6 per cent on the estimated damages. When we consider these facts it is fair to say that $4,000 additional might have been awarded by the jury. The utmost amount, then, which the jury should have awarded would have been the sum of $12,000.

Therefore, the judgment will be remitted down to $12,000, and for that amount it will be affirmed.