HOLMES *v.* LEE.

4-7505                                                    184 S. W. 2d 957

Opinion delivered January 29, 1945.

*Fred A. Isgrig* and *John S. Gatewood,* for appellant.

*Madrid B. Loftin* and *Wm. J. Kirby,* for appellee.

GRIFFIN SMITH, Chief Justice. Julius P. Lee and his wife, Margarette, were returning home at eight o'clock

the night of January 4, 1944. They had reached a point three miles west of Little Rock where a secondary lateral south road made a T connection with paved Highway 10 when the car driven by Julius was struck by an automobile driven by Dr. Glen M. Holmes. The Lee car was badly damaged. Mrs. Lee was severely cut on the nose and forehead. Dr. Holmes has appealed from judgments in favor of Julius for $350 to compensate property damages, and in favor of Mrs. Lee for $15,000 covering personal injuries.

It is first insisted that the Court erred in not giving the defendant's requested Instruction No. 1. This would have directed the jury to find against each plaintiff on all points. It presents the question whether there was substantial evidence that Dr. Holmes was negligent.

Julius testified that as he approached the road intersection no traffic was in sight; whereupon he steered nearer the median line to facilitate a turn to the left. As the turn was being made Lee saw headlights "bobbing up from over the hill." He slowed to eight or ten miles, turned into the secondary road, and had cleared the 17-foot paving with all but the rear wheels of his car when Dr. Holmes struck him. Force of the impact knocked the Lee car back nineteen feet. It came to rest in a ditch south of the highway, with front end pointing north. Dr. Holmes' car proceeded approximately fifty yards and was stopped. Although Lee used his left hand to signal an intent to turn, he did not expect the oncoming driver to see the warning because distance at that time was too great.

Beyond the intersection (beyond Lee and where Dr. Holmes was when his car was seen) there is a T road sign, maintained to inform drivers in respect of physical conditions. It is 129 yards west of the connecting road.

On cross-examination Lee testified that his signal of an intent to turn was made when he was ten or fifteen feet from where he actually veered to the left. Not having correctly estimated the speed at which Dr. Holmes was traveling, Lee stopped or appreciably slowed in order

to shift into low gear. The impact came while he was thus engaged.

Dr. Holmes testified that the collision occurred sixty feet east of the road intersection. He (Holmes) was actually "in" the intersection when Lee began to turn. Holmes attempted to "dodge" by swerving to the right, but observed a concrete culvert with raised structure, into which he was heading. This necessitated a turn to the left. In making this maneuver he "almost instantly" struck the rear left side of Lee's car.

Margarette Lee's testimony was substantially the same as that given by her husband regarding conduct of the two drivers.

Mrs. Lee was cut when thrown against broken glass or parts of the front structure of the automobile. She was taken to the home of Kelly Driver who resided nearby. Dr. Holmes, who apparently sustained only a broken thumb, explained that he was a physician and undertook to treat the injured woman. Driver, called as a witness by the Lees, testified that he found glass and fragments of radiator grille about six feet from the culvert, inference being that the collision occurred there. Skid marks lead from this point to where the Lee car came to rest.

Frederick Tatum, then a State policeman, saw glass and mud at the intersection "where the accident occurred." He denied having told an insurance adjuster that the collision occurred "twenty long steps east of the intersection"; neither had he made the statement that Julius Lee told him that in making the turn he erred in judging distances. In his official report Tatum wrote that the driver of the vehicle making the left turn was at fault. This report, he explained, was completed after he talked with Dr. Holmes and before discussing the matter with either of the Lees.

While there are inconsistencies in testimony given by the two plaintiffs—such, for instance, as the assertion that Dr. Holmes traveled approximately half a mile while the Lee car was making the turn—it must be remembered

that the transaction occurred at night, and estimates were only generalizations. Although the impact may have occurred sixty feet east of the intersection, just as Dr. Holmes says it did, he is substantially contradicted on this point, and in other respects. To say that a jury question was not presented would require that we find, as a matter of law, that statements by the two appellees and by Driver and Tatum were contrary to undisputed physical facts, and that the collision could not have happened as the Lees say it did. It follows that the Court did not err in refusing to give an instructed verdict for the defendant.

The second assignment is that prejudicial error was committed in giving plaintiffs' Instruction No. 1, as to which there was a general objection.[1] It is what is termed a "binding" instruction, closing with the expression, "Then you will find for these plaintiffs." *St. Louis, Iron Mountain & So. R. R. Co.* v. *Rogers,* 93 Ark. 564, 126 S. W. 375; *Missouri Pacific Railroad Co.* v. *Beard, Adm'r,* 198 Ark. 346, 128 S. W. 2d 697. Where an instruction directs the jury to find for the plaintiff if stated conditions concur, but fails to say that contributory negligence is a defense, (as to which there is appropriate proof), it is inherently wrong and cannot be cured by correct instructions separately given.

Appellees concede that omission of the defense of contributory negligence renders the instruction defective as to Julius Lee, but contends that the driver's negligence would not be imputed to his wife, and as to her appellant's objection is untenable, notwithstanding the testimony of Dr. Holmes that immediately following the collision Mrs. Lee told him that just as Julius started to turn to the left (and presumably while observing the ap-

---

[1] "If you find from a preponderance of the evidence in this case that the defendant struck and collided with the automobile in which plaintiffs, Julius and Margarette Lee, were riding, and that the collision was caused by the carelessness and negligence of the defendant, Glen M. Holmes, as alleged in the complaint, and you further find from the evidence that these plaintiffs were injured as alleged in the complaint and that the negligence, if any, of the defendant, was the proximate cause of such injuries, then you will find for these plaintiffs."

[The case was not tried upon the theory that the Lees were engaged in a joint enterprise.]

proaching car with apprehension) he observed, "I believe I can make it." A majority of the Court takes the view that in the circumstances of this case the negligence of Julius would not be imputed to his co-plaintiff.

· The third objection is that because, as counsel for appellant believe, there was no testimony that Dr. Holmes was driving rapidly or recklessly, it was improper to instruct that if such were the case he would be responsible for any damage resulting from such conduct. Fallacy of this argument is that while no witness used affirmative language that the Doctor was driving "recklessly," testimony of the Lees, if found true (and this testimony was acted upon by the jury, and therefore must have been believed) justified the inference that the collision could not have occurred if the Holmes car had not been driven at an excessive rate of speed. These deductions also justified plaintiffs' Instruction No. 5, objected to on the ground that it was abstract.

Having held that plaintiffs' Instruction No. 1 was erroneous, but that it did not impair Margarette's rights, it is not necessary to discuss the fifth assignment, which deals with the Court's refusal to read certain statutory provisions relating to left turns. Inasmuch as Julius Lee's contributory negligence is not imputable to his wife, the objection is moot. Nor was error committed in modifying defendant's requested Instruction No. 5 which would have told the jury that the plaintiffs were not entitled to recover "merely because they may have suffered personal or property injury or damages." The correct rule was stated in other instructions.

The next assignment alleges error with respect to the conditional admission of certain testimony.

After the mishap,[2] Dr. Holmes called at the hospital where Mrs. Lee was receiving treatment. Julius Lee's father, "in the son's presence and within his hearing," said to Dr. Holmes: "My boy tells me he misjudged his distance and that he was sorry." The father then shook

[2] The conversation occurred the morning of January 5th—a day following the collision.

hands with Dr. Holmes. When this testimony was objected to [3] the Court said: "I am going to let that go in the record. As I stated before, it is not binding on the plaintiff. It may be considered by the jury along with all the other evidence in the case." Whereupon counsel for the defendant said, "I think it should go further: it may be considered as testimony if he did not deny it." The Court remarked: "I may be wrong about it, but I will take the chance." The objection was: "Save our exceptions to the Court's refusal to give an instruction as requested." Then the Court added: ". . . He wouldn't be bound, however, if he was present and made no statement to the contrary."

The nearest approach to a denial came when Lee, on cross-examination, was being interrogated about the relative speed at which he and Dr. Holmes were traveling. Breaking the sequence of events, counsel for the defendant said:

". . . Oh yes: Also, at the time you made this statement, did not your father, in your presence, tell Dr. Holmes 'you all' were very sorry the accident happened, and stated this: 'My son just tells me he just misjudged the distance'?"

The Court sustained an objection. While counsel argued, Julius remarked, "I didn't hear him say it." There was reference to Lee's conversation with Dr. Holmes "a little bit later when a nurse was present," but the witness said, "I didn't see her."

Although specifically, Lee's disclaimer went only to what the nurse had heard, the Court must have construed the transactions as having occurred in immediate sequence. It is not quite clear just what was meant when the jury was told that the Doctor's testimony and that of the nurse might be considered with all the other evidence,

---

[3] The matter testified to by Dr. Holmes was substantiated by a nurse.

and then restricted it by saying it would not be binding upon the plaintiff.[4] Perhaps the thought was that testimony of these witnesses would not, standing alone, "bind" plaintiff to the extent of precluding a recovery; that even if he misjudged the distance, this was not the proximate cause of the collision nor an act of contributory negligence if on the whole case it appeared that the crash would have occurred solely because of what Dr. Holmes did. Whatever may have been the Court's intent, a reasonable construction by the jury must have been that the testimony was to be accepted for what it was worth, "along with other evidence."

We agree with appellant that the verdict was grossly excessive.

Julius Lee testified that prior to the injury his wife was in good health. They have a nineteen-months-old baby. Mrs. Lee has been nervous since receiving the three cuts, "unable to do her house work or anything else." The attending physician told him 47 stitches were required to suture the wounds, one of which extended into the nasal cavity, another through the scalp to the skull, and another of less degree. The physician's charges were $150. Mrs. Lee was in the hospital seven days. The injured woman testified that the scars were a matter of embarrassment to her. She sometimes feels fairly well, but in a car or a crowd she gets "extremely nervous."

Dr. Harry Hayes, the family physician and surgeon who attended Mrs. Lee, testified that there were no broken bones—only flesh wounds. Upon arriving at the hospital the night of January 4th he found that the patient had suffered from the wounds and hemorrhage. Although testifying that Mrs. Lee was apparently nervous, Dr. Hayes expressed the opinion that all of the trouble of this nature was not traceable to the collision. In regard to permanent disability, Dr. Hayes stated that "The only aftereffect of those wounds is the scar they leave where she was cut." The healing process was com-

---

[4] "Plaintiff" was used by the Court in the singular sense, but the instruction and other similar expressions were treated as applicable to each of the Lees who sued.

plete. When asked whether the scars were disfiguring, Dr. Hayes replied, "I thought I got pretty good results"; to which counsel for the plaintiffs responded, "I think you did, too, but the scars are still there, are they not?" The answer was, "They surely are."

Recognizing, as we do, that any appreciable scar on a lady's face may cause embarrassment, and that the blemish, if traceable to another's negligence, calls for appropriate compensation, the fact remains that personal pride and the appearance of an attractive woman can never be fully atoned for or the effects removed by. a money payment. But in the absence of aggravative circumstances predicated upon malice or wilfullness, the limit of recovery must be in some proportion to the injury sustained.

A holding in *Missouri Pacific Transportation Co.* v. *Simon*, 199 Ark. 289, 135 S. W. 2d 336, was that where the record shows that verdicts awarding damages for personal injuries were arrived at through sympathy, prejudice, or partiality, it became the duty of the Supreme Court to give judgment for the sums shown to be justified, or to reverse and remand for another trial. The same thought was expressed by Chief Justice ENGLISH when he said: "A jury is not left without restraint in the matter of assessing damages . . . in any case. If the damages assessed are so enormous as to shock the senses of justice, and to indicate that the verdict is the result of passion or prejudice, the trial court may set it aside, and if he refuses, this court, on appeal or writ of error, may do so." *Little Rock & Fort Smith Railway Company* v. *Barker and Wife*, 39 Ark. 491.[5]

In the light of cases mentioned, and those shown in the footnote, we think the judgment in favor of Margarette Lee should be affirmed for $5,000, and if within

[5] For some of the cases dealing with the necessity for requiring remittitur, see *Interurban Railway Company* v. *Trainer*, 150 Ark. 19, 233 S. W. 816; *The Railway Ice Company* v. *Howell*, 117 Ark. 198, 174 S. W. 241; *Temple Cotton Oil Company* v. *Holiday*, 185 Ark. 1190, 47 S. W. 2d 4; *Temple Cotton Oil Company* v. *Brown*, 192 Ark. 877, 96 S. W. 2d 401; *St. Louis, I. M. & S. Ry. Co.* v. *Robbins*, 57 Ark. 377, 21 S. W. 886; *Missouri & North Arkansas Railroad Company* v. *Robinson*, 188 Ark. 334, 65 S. W. 2d 546.

fifteen judicial days a remittitur is entered for $10,000 this will be done; otherwise it will be reversed and the cause remanded for a new trial. The judgment in favor of Julius Lee is reversed because of the error in giving plaintiff's Instruction No. 1, and the cause is remanded for a new trial.