SOUTHERN BUS COMPANY *v.* SIMPSON.

4-8668                                    215 S. W. 2d 699

Opinion delivered December 20, 1948.

*J. W. Patton, Jr.,* for appellant.

*Pat Robinson,* for appellee.

SMITH, J.   Through the negligence of appellant, appellee's automobile was damaged, and in the suit to recover compensation for the damage a verdict for $900 was returned in appellee's favor, and from the judgment rendered upon that verdict is this appeal.   The only issue raised on the appeal is whether the trial court erred in refusing to grant a new trial, or to modify the judgment on the ground that the damages awarded by the verdict and judgment were excessive.

A competent mechanic who examined the car after the collision which damaged it, testified that it could have been restored to a condition as good as new, at a total cost of $357.27.   Two items comprised this total, one for parts, $126.77, the other $230.50, for labor.   The mechanic admitted that the market value of the car would be reduced because it had been repaired, but he stated it would be as good as new when repaired.

Under this testimony appellant insists, upon the authority of the case of *Golenternek* v. *Kurth,* 213 Ark. 643, 212 S. W. 2d 14, that the judgment should be reduced from $900 to $357.27. In the case cited the plaintiff undertook to prove her damages by showing an offer for the car made before it was damaged, and the highest offer she had been able to get after it was damaged, but we there said: "evidence of isolated offers cannot in itself —and it stands alone in this case—be used by the plaintiff to establish market value." It was there further said that: "In the absence of other competent proof of market value, we have held that the difference in market value before and after the collision may be established by a showing of the amount paid in good faith for the repairs necessitated by the collision. (Citing cases.)"

Here there is other proof of damages besides the cost of repairs. It may first be said that the provisions of The Emergency Price Control Act of 1942, Title 50, USCA, appendix § 925, are not involved and are not referred to or relied upon in this case.

The testimony shows that appellee purchased the car July 7, 1947, at a total cost of $1,597.55, including sales tax. The collision causing the damage occurred November 13, 1947, at which time the car had been driven 15,000 miles. On December 13, 1947, appellee purchased a new car from the dealer who had sold him the first car, at a price of $1,547.20. A cash payment of $700 was made, and the old car was traded in. The two cars involved in the trade were identical except as to color.

The second car was bought at its list price, and appellant insists that the old car cannot be valued at a higher price than the new one. But the undisputed evidence is to the effect that the market value of the old car was greater than the list price of a new one. This difference arose out of the fact that there was a demand for cars for which there was no supply, and an open market existed for old cars in good condition at prices greater than the list price of new cars. The testimony shows that old cars could be obtained on the open market whereas new cars could not be had without waiting for an indefinite time for an order for a new car to

be filled, and persons needing a car and unwilling to wait this indefinite time were willing to pay and did pay a price in excess of the list price of a new car in order to obtain an old one in good condition without delay.

A dealer in used cars testified that he bought and sold many models and makes of cars, and was familiar with their market value, and that he knew the market value of appellee's car which was brought to his place of business for examination, and that its market value before the collision was from $2,100 to $2,200, and that he would have given $1,000 for it after the collision, and would have made a profit on the transaction. According to this dealer the market value of the car had been reduced more than a thousand dollars, whereas the verdict was for only $900. Another dealer in used cars who examined the car in question testified that "the way cars were selling on the wholesale market at that time dealers (including himself) would pay from $2,100 to $2,200 for cars of appellee's type, and that after the collision appellee's car was worth from $1,000 to $1,100.

This testimony supports the finding that before the collision appellee's car was worth, and could be sold on the open market for from $2,100 to $2,200, and that its value after the collision was from $1,000 to $1,100, and this testimony is sufficient to support the jury's verdict.

It is insisted, and is true, that under the jury's verdict, appellee realized a profit out of the collision. But this profit was potential and could have been realized by selling the car if the collision had not occurred.

The court correctly charged the jury on the measure of damages as follows: "The plaintiff is entitled to recover at your hands the difference in the fair market value of this automobile immediately before and immediately after the collision. The market value of an article or commodity is what it will bring on the open market when sold by a willing seller to a willing and able buyer and you will find for the plaintiff in whatever sum you find will be the difference in the market value of this car immediately before it was wrecked and immediately after it was wrecked."

This instruction conforms to the rule announced in the *Golenternek* v. *Kurth* case, *supra,* and another case there cited, and numerous other cases to the same effect, and as the testimony shows a depreciation in value as a result of the collision, greater than the verdict, the judgment must be affirmed, and it is so ordered.