WHALEY v. CRUTCHFIELD.

5-1051                                    294 S. W. 2d 775

Opinion delivered November 5, 1956.

922

*Surrey E. Gilliam* and *Melvin E. Mayfield,* for appellant.

*McKay, Anderson & Crumpler,* for appellee.

SAM ROBINSON, Associate Justice. This is an appeal from a judgment in the sum of $1,500 in favor of appellee, Todd Crutchfield, for damages, to an automobile he owned, which occurred in a collision with an automobile owned and operated by appellant, Charles Whaley. Crutchfield is in the automobile business at Magnolia; at the time of the collision one of his automobiles was being driven by his employee, Grady England. Whaley and England were proceeding in opposite directions. Crutchfield alleges that Whaley negligently cut to the left in front of England, Crutchfield's employee. Whaley denied the allegations of the complaint and pleaded contributory negligence on the part of England.

Appellant first argues that the trial court erred in giving Instruction No. 1 requested by appellee. The instruction is as follows: "You are instructed that the laws of the State of Arkansas provide that 'No person shall turn a vehicle from a direct course upon the Highway unless or until such movement can be made with reasonable safety and then only after giving a clearly visible signal of intention to turn continuously during no less than the last 100 feet of travel by the vehicle before turning. Failure to comply with the laws of this State

may be considered in connection with all of the other testimony in the case in determining whether or not a party is negligent."

Appellant says a signal to turn is necessary only in the event another car may be affected. Without a prolonged discussion of this point, suffice it to say that here, another car was affected. Appellant also contends that the last sentence of the instruction assumes there was a failure to give a signal to turn. We think the instruction might be construed by a jury as assuming that the signal was not given; hence, on re-trial, the instruction should be framed so as to eliminate this objectionable feature.

The following is Instruction No. 3, given at the request of appellee: "If you find by a preponderance of the evidence that the defendant was negligent and that said negligence was the sole proximate cause of the collision then you shall return a verdict in favor of the plaintiff as against the defendant." This is a binding instruction.

Appellant maintains that the instruction is defective in three particulars: First, that it authorizes the jury to find for the plaintiff if the defendant is guilty of any negligence, and does not confine the jury to a consideration of the negligence alleged in the complaint only. Even if the instruction is defective in this respect, it is not inherently erroneous on that account, and no specific objection was made calling the court's attention to the error now urged in that regard. "A general objection to an instruction not inherently erroneous is insufficient." *Carmichael, Admx.* v. *Mercury Motors,* 224 Ark. 553; 275 S. W. 2d 15. Further, it is claimed that the instruction assumes there was negligence on the part of appellee, but we do not think the instruction is bad in that respect. *Nolan* v. *Haskett,* 186 Ark. 455; 53 S. W. 2d 996. As his third proposition, appellant contends the instruction is fatally defective because it is a binding instruction, which tells the jury to find for the appellant on certain conditions, and that it is inherrently erroneous because it ignores the defense of con-

tributory negligence asserted by the appellee. Where an instruction is inherently erroneous and binding, it cannot be cured by a correct instruction. The court said, in *Holmes* v. *Lee,* 208 Ark. 114, 184 S. W. 957, "Where an instruction directs the jury to find for the plaintiff if stated conditions concur, but fails to say that contributory negligence is a defense, (as to which there is appropriate proof), it is inherently wrong and cannot be cured by correct instructions separately given." In the case at bar, there was evidence of contributory negligence on the part of England, appellee's employee. Therefore, the instruction should have included the defense of contributory negligence. Appellee maintains that the instruction is not erroneous because it uses the term "sole proximate cause," but we see no practical distinction between "the proximate cause" and "the sole proximate cause."

Over appellant's objections, appellee was permitted to prove declarations of a third party made at the scene of the collision. After appellant's objections were overruled, the witness, Grady England, was questioned by appellee's attorney with reference to statements made by a third party.

"Q. Now, what did she say?

A. She says, 'Uncle Charley, I told you that you was going to get in trouble driving like this. You see this man is directly in his lane, and he couldn't help but hitting you.'

Q. What did Mr. Whaley say?

A. Now, I don't remember him saying anything.

Q. As far as you know he didn't say anything.

A. That's right."

The third party declaration was not admissible in evidence; it was hearsay, and, as such, was not admissible unless the declaration came within one of the exceptions to hearsay rule. If the evidence is admissible, it would be on the theory that it was an implied admission

on the part of appellee. One of the requisites for the admission of declarations of third parties is whether "the statement is made under such circumstances and by such persons as naturally call for a reply." 20 Am. Jur. 480. Here, the person who is alleged to have made the statement is not identified. True, she addressed appellant as "Uncle Charley," but for all the record shows, everybody in the community may have called him "Uncle Charley." The appellant had just been in a collision where considerable damage was done; in all probability, he was somewhat excited at the time. Perhaps he knew the woman who is alleged to have made the statement, but, on the other hand, he may not have known her. There is no showing that the woman saw the collision or knew anything about how it occurred. In these circumstances, we do not believe the appellant was called upon to make a reply. "Whether the circumstances are such as to call for a reply is a question for the court." *Pulver* v. *Union Investment Company*, 279 F. 699.

Lastly, there is the contention that the court erred in refusing to permit Whaley to prove the replacement cost of the automobile to Crutchfield in determining the measure of damages. Appellee Crutchfield proved that the retail market value of the car, immediately before the collision, was $3,211, and the value immediately after the collision was $1,001. Appellant Whaley offered to prove that the wholesale cost of the automobile to the appellee was not in excess of $2,409.27, and that the car could be replaced by appellee for that amount. But, the court refused to permit such evidence to go to the jury. The jury were instructed that the measure of damages was the difference between the market value immediately before and immediately after the collision occurred. In the situation presented here, the measure of damages is the difference between what the wholesale price of the car, delivered to appellee, would be immediately before the collision and the market value immediately after the damage occurred. Ordinarily, the measure of damages is the retail market value of the property immediately before the damage occurs, and immediately thereafter. *Southern Bus Company* v. *Simpson*, 214 Ark. 323, 215

S. W. 2d 699. But, that rule does not apply where the property involved is part of a stock in trade of a business concern. In *Sedgwick on Damages,* 9th Edition, Volume 1, § 248a, it is said: "When in the ordinary case a value is to be found for a single thing, the value is what that single thing would sell for; which amounts to the retail value of it. But when a court is dealing with a stock of goods held for sale, or even with a portion of such a stock, the value to be found is its value as a stock or part of a stock of goods, that is, its wholesale value, without the profit of resale which enters into the retail value; for at the time of valuation that profit has not yet been earned, or, to put the matter in another way, the process of distribution, which brings the goods into the hands of the consumer and thus gives them their final increment of value, has not yet taken place."

And the court said, in *John Blaul & Sons* v. *Wandel,* 137 Iowa 301, 114 N. W. 899, "We think the Court also erred in allowing the jury to take into count the retail price of the flour in determining its value. The flour being a merchantable commodity and not having been paid for, defendant could have suffered no damage from the wrongful taking of it save the expense of replacing by the purchase of other flour of the same quality in the quantity taken. He was not entitled to have from the plaintiffs the price for which he might have sold the flour in the ordinary course of business at retail."

Our own case of *General Fire Extinguisher Company* v. *Beal-Doyle Dry Goods Company,* 110 Ark. 49; 160 S. W. 889, involves the damage to a stock of merchandise. There, the court said: "The market value of the goods to appellee immediately before the injury was what such goods would have cost in the usual markets where same could have been purchased, plus the expense or cost incident to shipping them to appellee's place of business, and the market value immediately after such goods were damaged was what the goods could have been sold for in the market where the goods were held for sale." Here, Crutchfield is in the automobile business; the car damaged was a new one which was taken

out of stock by Crutchfield's salesman merely for the purpose of showing it to a prospective purchaser. In these circumstances, the measure of damages is the difference between the wholesale market value of the car immediately after the collision and the wholesale value, plus delivery charges, immediately before the damage occurred.

We have examined the other points argued by appellant, but find only the errors indicated herein.

Reversed and remanded.

WARD, J., concurs.

PAUL WARD, Associate Justice (concurring). I agree with the result reached by the majority in reversing this case because I do not think the testimony of Grady England was admissible in evidence.

However I do disagree with the majority opinion in two respects as set out below.

1. In my opinion Instruction No. 3 given at the request of appellee was not erroneous. My knowledge of the meaning of the English language impels me to conclude that the word "sole" as used in the instruction was sufficient to leave no doubt in the minds of the jury that there could be no other proximate cause than that of the defendant's negligence, and that consequently it did not ignore the defense of contributory negligence which was adequately set forth in other instructions.

2. In my opinion the instruction on the measure of damages given by the court and set out in the majority opinion is a correct and proper instruction, i. e. the difference between the market value of the automobile immediately before and after the collision occurred. It is conceded that this would have been the proper instruction if the damaged automobile had belonged to a member of the general public rather than to an automobile dealer.

It seems to me that the majority in announcing the rule it did—the difference between the wholesale market value of the car immediately before and after the colli-

sion—failed to take into consideration that the car was not completely destroyed. I concede that where goods, belonging to a retailer, are completely destroyed the measure of damages is as stated by the majority. On the other hand, where such goods are only damaged, the proper rule is the general rule first announced. There are several reasons supporting my contention.

In the first place, the *General Fire Extinguisher* case [cited by appellant] does not sustain the rule announced by the majority. In that case the court announced the correct rule as to the measure of damages, *where goods are injured but not totally destroyed,* as follows: "If you find for the plaintiff you will assess its damages at such sum as you may find from the evidence to be the difference between the market value of the goods injured or damaged . . . immediately before they were damaged and the market value thereof immediately after they were damaged."

In the second place, it is my contention that the same figure would be arrived at regardless of whether market value or wholesale value is used. A simple example will suffice to explain. If it costs $100 to replace the fender on an automobile, this figure would be the damage done to the automobile, if a fender is knocked off, regardless of whether the automobile belonged to an individual or a car dealer.

In the third place, it seems to me that the rule announced by the majority would be hard if not impossible to apply. Just what is meant by the wholesale value of a damaged automobile. So far as I know there is no such thing, but if there is then it is obvious that there are only a few people in the State of Arkansas who know what it is and who would be available to testify in an ordinary collision suit.