Fred BRASCOMB Jr. *v.* STATE of Arkansas

CR 76-231                                          550 S.W. 2d 450

Opinion delivered May 16, 1977
(In Banc)

*Don Langston* and *Hubert Graves,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. A jury convicted appellant of delivery of heroin (Ark. Stat. Ann. § 82-2617 (a) (1) (i) [Repl. 1976]) and assessed his punishment at 15 years imprisonment in the Department of Correction. For reversal appellant first contends that "the court erred in refusing to let the defense introduce evidence of the arrangement of the undercover officer and one Billy Lincoln whereby Lincoln would be compensated for getting people to sell drugs to the undercover officer." An undercover police officer, Morfey, arranged to buy heroin from appellant through James "Jazzbone" Barnes, who was paid by Morfey for setting up drug buys. Appellant was arrested after two separate sales to Morfey procured by Barnes. Appellant's defense was entrapment which Morfey denied. However, Morfey agreed that "James Barnes is not the only person [he, Morfey] had told that [he] would pay them money to bring people to [him] to buy from. . . . " Further, "that if [Barnes] brought Fred Brascomb [appellant] to [Morfey] that according to [Morfey's] agreement [Barnes] would get this kick back you're talking about. . . . " Appellant attempted to cross-examine Morfey about Billy Lincoln, another drug producer. Morfey admitted knowing him and that he was working for him.

Q. You never did pay Billy Lincoln to bring people to you?

A. That was done—

Mr. Fields: Your Honor, I'm going to object to the final question unless defense counsel can show that it is relevant to that.

Mr. Graves: Your Honor, what I'm trying to show is the entire operation or scheme of paying people to set other people up.

Appellant argues that evidence as to the activities of the state's witness is permissible as relevant to proving appellant's defense of entrapment. Entrapment is an affirmative defense. Ark. Crim. Code § 41-209 (1976). The state responds that any evidence with respect to Morfey and Lincoln is a collateral issue and, therefore, the limitation on cross-examination was proper. We cannot agree. In *French* v. *State,* 260 Ark. 473, 541 S.W. 2d 680 (1976), the contention was made that a contingent arrangement, which depended upon whether an informer made a case and how many arrests resulted, involved a collateral issue. In rejecting this contention and holding that an arrangement between an undercover agent and his informer was not a collateral issue, we said:

> The same contention, now made by the State, was argued by the Government in *Sorrells* v. *United States,* [287 U.S. 435 (1932)]. In answer to the argument there that the defense of entrapment would lead to 'the introduction of issues of a collateral character relating to the activities of the officials of the Government. . . ,' the court there stated: 'The Government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused. . . .'

Here the defense was entrapment by the activities of a government official and, consequently, we are of the view that evidence sought by the cross-examination of the witness was not a collateral issue. Common justice requires that any evidence pertinent to the controlling issue of the defense, entrapment, should be permitted. Here appellant sought to show the course of conduct or activities utilized by the state's witness in his undercover operations.

We next consider appellant's contention that the trial court erred in giving instruction No. 5 which defined delivery of a controlled substance and then told the jury that if they believed beyond a reasonable doubt that the defendant committed the offense "you should find the defendant [appellant] guilty. . . . " Appellant argues that the instruction, in effect, is binding and prejudicial since it omits his defense of entrapment. The state responds that another instruction, which immediately followed, supplied the omitted defense and no pre-

judice resulted. It appears that our cases are in conflict on these opposing contentions. Typical cases in support of the state's position are *Clingan v. State,* 77 Ark. 141, 91 S.W. 12 (1906); *Satterwhite v. State,* 82 Ark. 64, 100 S.W. 70 (1907); *Slaytor v. State,* 141 Ark. 11, 215 S.W. 886 (1920); and *Edwards v. State,* 180 Ark. 363, 21 S.W. 2d 850 (1929). In the latter case we said:

> As to the omission of the self-defense plea, the next instruction fully covers the subject, and we do not think the jury could have been misled on either proposition.

Typical cases in support of appellant's position are *Claiborne v. State,* 51 Ark. 88, 9 S.W. 851 (1888); *Davis v. Self,* 220 Ark. 129, 246 S.W. 2d 426 (1952); *Reynolds v. Ashabranner,* 212 Ark. 718, 207 S.W. 2d 304 (1948); *Vaughn v. Herring,* 195 Ark. 639, 113 S.W. 2d 512 (1938); *Holmes v. Lee,* 208 Ark. 114, 184 S.W. 2d 957 (1945); *Phillips Cooperative Gin Co. v. Toll,* 228 Ark. 891, 311 S.W. 2d 171 (1958); *Whaley v. Crutchfield,* 226 Ark. 921, 294 S.W. 2d 775 (1956); and *Miller v. Ballentine,* 242 Ark. 34, 411 S.W. 2d 655 (1967). In *Miller* we said:

> It is inherently wrong to give an instruction which ignores a material issue in the case and allows the jury to find a verdict without considering the omitted issue. Such error cannot be cured by correct instructions separately given.

There we further said: "It is not unreasonable to believe that the jury gave considerable weight to this instruction."

We have consistently discouraged the giving of a binding instruction "because of the impracticability of stating all the various propositions of law involved in one instruction" and courts, "should wherever possible, avoid the giving of binding instructions." *Moore v. State,* 252 Ark. 526, 479 S.W. 2d 857 (1972). Further, it is significant, as we recognized there, that AMI Civil "does not contain a binding instruction."

It seems that in civil cases we have consistently disapproved a binding instruction which omitted a material or vital issue. We have not consistently so held in criminal cases.

It is difficult to understand the double standard. Certainly it must be said that a jury is as competent and perceptive in criminal cases as in civil cases. We observe that a Supreme Court Committee is presently drafting model instructions for use in criminal cases. No doubt, these model instructions will not contain a binding instruction which, as indicated, was carefully avoided by the Committee which drafted AMI Civil.

Because of the inconsistency in our cases with respect to binding instructions, we deem it necessary to hold that after the effective date of this opinion, we will reconsider the disharmony in our cases.

We have considered appellant's two other contentions for reversal and find no merit in them. For the error indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.

HARRIS, C.J., and FOGLEMAN, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I disagree with the reversal in this case.

As to the first point relating to the attempt to interrogate Officer Morfey regarding the arrangements made with an "undercover" helper, Billy Lincoln, I simply point out that Lincoln was not involved in any way with the sale made by appellant Brascomb. Rather, the "contact man" in this transaction was James "Jazzbone" Barnes. Whatever agreement Morfey had with Lincoln was completely collateral to the entrapment issue since appellant admittedly had absolutely no connection or contact with Lincoln. Morfey was questioned fully about his arrangement with Barnes and the officer explained his agreement with Barnes and stated that the latter was paid.

I cannot see how the case of *French v. State,* 260 Ark. 473, 541 S.W. 2d 680, has any relevancy whatsoever to the facts in the present litigation. In *French,* the defendant testified that he was talked into obtaining the marijuana by an agent named Haas working on behalf of the government, and it was con-

tended that Haas was paid by the Drug Enforcement Administration on a contingent fee basis, dependent upon the result in the case and the number of arrests effected. The defense attempted to call a special agent of the government to show the financial arrangement with Haas, which the trial court denied, and this court reversed. Now — let it be pointed out that French testified that *Haas was the individual who talked him into getting the marijuana.*[1] Haas accordingly in that case, *stood in the same position as "Jazzbone" Barnes in the present case,* but it is not contended, even in the slightest, that Lincoln had anything at all to do with enticing Brascomb into making the heroin sale.

I would affirm the judgment.

FOGLEMAN, J., joins in this dissent.